[Crim. No. 18466. Second Dist., Div. Five. Feb. 26, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES MELBOURNE MACINNES, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Howard J. Schwarb, Robert F. Katz and Frederick Millar, Jr., Deputy Attorneys General, for Plaintiff and Appellant.

Gene L. Rubin, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—By indictment, defendant was charged in count I with murdering Marjorie Menefee (Pen. Code, § 187), in count II and count V with seizing Marjorie Menefee and Louella Watson, respectively, in order to exact money from a friend or relative (Pen. Code, § 209), in count VI with carrying away Jerry Menefee to commit robbery (Pen. Code, § 209),

and in count III, count IV, and count VII, with robbing Marjorie Menefee, Louella Watson, and Jerry Menefee, respectively (Pen. Code, § 211).

Defendant pleaded not guilty. The indictment was amended to charge two prior felony convictions for robbery. Defendant was arraigned on the amendment to the indictment and denied the prior convictions. Defendant's motions to strike the prior convictions were argued and denied. Defendant was rearraigned and admitted the priors. Defendant's motion for acquittal pursuant to Penal Code section 1118.1 was argued and denied.

The jury found defendant guilty of count I (murder in the first degree) and found that defendant should be imprisoned for life. The jury found defendant guilty of count II (seizing Marjorie Menefee) and found that the victim suffered bodily harm and that defendant should be imprisoned for life without possibility of parole. The jury found defendant guilty of count V (seizing Louella Watson) and count VI (carrying away Jerry Menefee). The jury also found defendant guilty of counts III, IV, and VII (robbing Marjorie Menefee, Louella Watson, and Jerry Menefee), and found defendant to have been armed as to each count.

Defendant's motion for a new trial was granted as to counts II and V (seizing Marjorie Menefee and Louella Watson) and was denied as to the remaining counts. Probation was denied, and the court found that at the time of the commission of the offenses charged in counts I, III, IV, and VII, Penal Code sections 3024 and 12022 were inapplicable, but that defendant was armed within the meaning of Penal Code section 1203. Defendant was sentenced to state prison for the term of his natural life on count I, and to the terms prescribed by law on counts III, IV, VI, and VII. On defendant's motion, the "sentence and judgment on counts 1, 3, 4 and 7 [were] stayed during any appeal from the sentence and judgment on count 6; in the event that the sentence and judgment on said count 6 is finally affirmed on appeal or otherwise becomes final, then the stay of judgments on counts 1, 3, 4 and 7 [will become] permanent." The People appeal from the court's order granting defendant's motion for a new trial on count II and count V.[1]

In brief, the People introduced evidence at trial that on February 18, 1968, defendant and one Michael Whatley, each wearing a stocking mask and armed with a handgun, forced their way into the apartment of Jerry

---

[1]Defendant appealed from the judgment, but defendant's appeal is considered in a separate, unpublished opinion (2d Cr. No. 18320), wherein we affirm the judgment of conviction.

Menefee and his wife, Marjorie Menefee; that they found the Menefees at home with a houseguest, Louella Watson; that defendant held Marjorie Menefee and Louella as hostages while Whatley took Jerry Menefee to Menefee's businessplace where Whatley robbed Jerry Menefee of approximately $500; and that while Whatley and Jerry Menefee were gone from the Menefee apartment, defendant robbed both Marjorie Menefee and Louella Watson, and then shot and killed Marjorie Menefee.

Michael Whatley testified at trial that on February 18, 1968, he and defendant went to the Menefee apartment in order to effectuate their plan that Whatley was to take Jerry Menefee "to his store and get the money," while defendant was to stay with the wife. Whatley did take Jerry Menefee from the apartment and warned him that if there was any trouble, "his old lady would get hurt." Upon arriving at Menefee's store, Whatley robbed and bound Menefee and then left, but did not go back to Menefee's apartment.

Jerry Menefee testified that on February 18, 1968, defendant and another man forced their way into his apartment. While defendant stayed at the apartment with Marjorie Menefee and Louella Watson, the other man took Jerry Menefee from the apartment and warned Menefee that defendant "is very nervous, and remember, you got an old lady upstairs." Menefee was then taken to his store, was robbed, was bound, and was left.

Louella Watson testified that on February 18, 1968, she was visiting at Menefee's apartment when two men entered. One of the men took Jerry Menefee from the apartment. The man who remained in the apartment took money from her purse and took the "contents" of Marjorie Menefee's purse. Marjorie Menefee was then forced to lie on the floor while the man reached for the telephone as though he were going to use the cord to tie her, but he dropped that and reached across her face for the lamp cord, and when he straightened up, the lamp cord apparently was too short. It was at that moment Marjorie Menefee was shot. Louella Watson was told not to move, and the man left the apartment.

In regard to the seizing of Marjorie Menefee and Louella Watson, the jury was instructed as follows: "When a person seizes another with intent to hold or detain him, or seizes him in the act of holding and detaining him, for ransom, reward, or to commit extortion, or to exact from relatives or friends of the seized person any money or valuable thing, such seizure constitutes a crime *whether or not the person seized is carried or otherwise moved any distance from the place of the attack.*" (CALJIC No. 658;

italics added.)[2] Pursuant to this instruction, the jury found defendant guilty of having violated Penal Code section 209 as against both Marjorie Menefee and Louella Watson. Defendant argued to the trial court, however, that he was entitled to a new trial on these counts because the instruction was erroneous. Specifically, defendant argued that the instruction was incorrect in providing that Penal Code section 209 was possible of being violated as to Marjorie Menefee and Louella Watson "whether or not the person so seized is carried or otherwise moved any distance from the place of the attack." The trial court granted defendant's motion for a new trial as to these counts.

On appeal, the People contend that the instruction in question was not erroneous, and, therefore, that the trial court erred in granting defendant's motion for a new trial. We hold that the instruction was proper. In 1933, Penal Code section 209 was amended to provide in part as follows: "Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion *or robbery* or to exact from relatives or friends of such person any money or valuable thing, or who aids or abets any such act, is guilty of a felony. . . ." (Italics added.)[3] (Stats. 1933, ch. 1025, § 1, at p. 2617.) In 1950, our Supreme Court held that asportation of the victim was not an element of the 1933 version of Penal Code section 209. (*People v. Knowles,* 35 Cal.2d 175, 181 [217 P.2d 1].) In 1951, the Legislature amended Penal Code section 209 to provide in part as follows: "Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from relatives or friends of such person any money or valuable thing, or any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of a felony. . . ." (Stats. 1951, ch. 1749, § 1, at p. 4167.) In *People v. Chessman,* 38 Cal.2d 166 (at pp. 190-193) [238 P.2d 1001] our Supreme Court interpreted the 1951 amendment to mean that a mere "detention of the victim during the commission of armed rob-

---

[2]The following different instruction was given as to the count of carrying away Jerry Menefee to commit robbery and is not in issue: "To commit the crime of kidnapping for robbery as charged in count VI of the indictment the person so kidnapped or carried away must be moved some distance greater than that which is merely incidental to the commission of the robbery and which substantially increases the risk of harm to such person over and above that necessarily present in the crime of robbery itself."

[3]The italicized words were deleted in the 1951 amendment.

bery" (*id.* at p. 191) would not constitute a violation of section 209, but that a slight "forcible removal" (*id.* at p. 192) of a robbery victim would constitute a violation of section 209. In 1958, our Supreme Court reaffirmed its *Chessman* interpretation of the 1951 amendment. (*People* v. *Wein,* 50 Cal.2d 383, 399-400 [326 P.2d 457].) In 1969, however, our Supreme Court reexamined its *Chessman* interpretation of the 1951 amendment and held that "the rule of construction declared in . . . *Chessman* . . . is no longer to be followed. Rather, . . . the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies (e.g., *People* v. *Knowles* . . .) but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (*People* v. *Daniels,* 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

In the case before us, defendant contends that the *Daniels* case holds that section 209 is never possible of being violated where the victim's movement is merely incidental to the commission of the underlying crime, and, therefore, that the instruction as to the counts of having violated section 209 as to Marjorie Menefee and Louella Watson was incorrect in providing that no movement of the victim was necessary. In opposition to defendant, the People contend that the *Daniels* rule is limited to that part of section 209 which prohibits "carr[ying] away any individual to commit robbery," and that the *Daniels* rule does not apply to that part of section 209 which prohibits seizing and detaining an individual "for ransom, reward or to commit extortion or to exact from relatives or friends of such person any money or valuable thing, . . ." We agree with the People.

Simply, the 1933 amendment to section 209, in pertinent part, proscribed the seizing of a victim for ransom, reward, extortion, *or robbery.* The *Knowles* court interpreted this amendment to mean that no movement of the victim was necessary, and that a "standstill robbery" therefore also constituted a violation of section 209. The *Knowles* court went on to say (at p. 180) that if "[r]easonable men may regard the statute as unduly harsh and therefore unwise . . . , they should address their doubts to the Legislature." The following year, the Legislature enacted the 1951 amendment to section 209. In brief, the 1951 amendment repeated the proscription against seizing a victim for ransom, reward, extortion, or exacting money or something of value from a friend or relative, but deleted the proscription against *seizing for robbery;* instead, the Legislature added different language that proscribed *"carr[ying] away* any individual to commit robbery." The *Chessman* court thereafter acknowledged that the Legislature

had accepted its invitation to change section 209 (at p. 191), and that a "standstill robbery" would not constitute a violation of the 1951 amendment (at p. 191). The *Chessman* court went on to analyze the meaning of the phrase "carr[ying] away any individual to commit robbery," and the Supreme Court's analysis of this phrase was continued in *Daniels, People* v. *Williams,* 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008], *People* v. *Mutch,* 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], *People* v. *Timmons,* 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], *People* v. *Tribble,* 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 589], and *People* v. *Laursen,* 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145].

The Supreme Court has left untouched, however, the original *Knowles* interpretation of the verb "seize," and we have no reason to believe that that verb does not now have the same meaning when applied to the purpose of ransom, reward, extortion, or exacting something of value from friends or relatives, as it did when it was applied in *Knowles* to the purpose of robbery. We hold, therefore, that whenever a victim is seized for the purpose of ransom, reward, extortion, or exacting something of value from friends or relatives, no asportation of the victim is necessary to constitute a violation of section 209. We believe that a literal reading of section 209 clearly demonstrates that, irrespective of a victim's movement, section 209 is intended to include within the scope of its proscriptions the factual situation where an assailant seizes the banker's wife in the banker's home (without asportation of the wife) and telephones the banker for ransom. In such a case, the banker is the victim of an extortion, and the banker's wife is the victim of having been "seize[d] . . . to commit extortion" (Pen. Code, § 209) upon the banker. In the case before us, Jerry Menefee knew that Marjorie Menefee and Louella Watson would be hurt "if there was any trouble," and Marjorie Menefee and Louella Watson were victims of having been "seize[d] . . . to exact [money] from relatives or friends." (Pen. Code, § 209).

We conclude that section 209 is concerned with two fundamentally different factual situations: (1) the seizing *or* carrying away of a person for the purpose of exacting something of value from a different person; (2) the carrying away of a person for the purpose of robbing that same person. "*Any person who* seizes, . . . kidnaps, or carries away any individual . . . for ransom, reward or to commit extortion or to exact from relatives or friends of such person any money or valuable thing, *or any person who* kidnaps or carries away any individual to commit robbery . . . *is guilty of a felony* and upon conviction thereof shall suffer death or shall be punished by imprisonment in the state prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the

person or persons subjected to kidnaping[4] suffers or suffer bodily harm[,] or shall be punished by imprisonment in the state prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm." (Pen. Code, § 209.)

██ We hold, therefore, that since Marjorie Menefee and Louella Watson were seized and detained for the purpose of "ransom, reward or to commit extortion or to exact from relatives or friends . . . any money or valuable thing" (Pen. Code, § 209), there was no error in instructing the jury that defendant could be found guilty of violating section 209 as to both women, notwithstanding that neither woman was "moved any distance from the place of the attack." (CALJIC No. 658.) As a consequence, the trial court's order granting defendant a new trial as to the counts of violating section 209 as to Marjorie Menefee and Louella Watson must be reversed.

The order is reversed.

Kaus, P. J., and Cole, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 25, 1973.

---

[4]We believe that the term "such kidnaping" is a reference to all of section 209. If the term "such kidnaping" were interpreted to refer only to the verb, "kidnap," in section 209, then, of course, the section would provide penalties only for "kidnaping," and any act proscribed by the other verbs in the section (seizes, confines, inveigles, entices, decoys, abducts, conceals, or carries away), though a felony, would not carry a penalty within the terms of section 209. This would not be a reasonable interpretation.

*Assigned by the Chairman of the Judicial Council.