[Crim. No. 24088. Oct. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
WENDELL WARREN NORRIS, Defendant and Appellant.

## Counsel

Frank O. Bell, Jr., State Public Defender, under appointment by the Supreme Court, Ezra Hendon, Chief Assistant State Public Defender, and Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Herbert F. Wilkinson, Eugene W. Kaster and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LUCAS, J.**—Defendant Wendell Warren Norris appeals from a conviction of kidnaping for the purpose of extortion, resulting in a life sentence with possibility of parole. (Pen. Code, § 209, subd. (a); all further statutory references are to that code unless otherwise indicated.) At issue is whether defendant committed, or intended to commit, the crime of extortion as defined by section 518 when, after obtaining a gun, he ordered police officers who held him in custody to drive him to a safe haven and release him. We conclude that, although defendant committed a variety of other crimes, his demands neither constituted extortion nor reflected any intent to extort within the meaning of section 209. Accordingly, we remand the case for resentencing.

The facts are substantially undisputed. On May 27, 1981, Deputies Coyle and Bridewell were transporting defendant from Folsom State Prison to the branch county jail in Vallejo for legal proceedings. As driver Bridewell neared the off-ramp for the jail, defendant, in the rear of the car, told Coyle to "turn around and take a look at something." Defendant, who was brandishing a .22 caliber revolver, thereupon ordered Bridewell to continue on to San Francisco, and Bridewell did so. After assuring the officers he did not want to hurt them, defendant demanded that they handcuff themselves together. When the deputies did not respond, he threatened to kill them. At this point, Bridewell slammed on the brakes and drove the car against a tree in the median. Both officers dove from the car. Defendant, however, remained in the rear seat, until he was removed by other officers.

The jury found defendant guilty of kidnaping Coyle for the purpose of extortion (§ 209, subd. (a)); simple kidnaping of Coyle and Bridewell (two counts) (§ 207); assault with a deadly weapon as to Bridewell (§ 245); and attempted escape by force (§ 4530, subd. (a)). As to the offenses other than assault with a deadly weapon, the jury found that defendant had used a firearm in their perpetration (§ 12022.5). The court sentenced defendant to life with possibility of parole on the aggravated kidnaping count, to be served consecutively to a 10-year sentence imposed for the Bridewell kidnaping. The sentences for these kidnapings were to commence after defendant completed sentences he was already serving for other offenses. Sentencing on all other counts was suspended.

■ Defendant asserts his conduct did not fall within the statutory definition of kidnaping for the purpose of extortion. We agree.

Section 209, subdivision (a), provides that "[a]ny person who seizes, confines . . . , kidnaps or carries away any individual . . . with intent to

hold or detain . . . such individual . . . to commit extortion'' is subject to life imprisonment with or without parole, depending on whether death or bodily harm results. "Extortion" is defined in section 518 as "the obtaining of property from another, with his consent, *or the obtaining of an official act of a public officer,* induced by a wrongful use of force or fear, or under color of public right.'' (Italics added.)

The issue before us is whether the deputies' compliance with defendant's demands would have constituted an "official act." The People maintain this term covers *any* act performed in the course of a public officer's duties. Defendant, on the other hand, asserts that the term extends only to those activities which the officer performs under the color of his office, that is, in his official capacity. Because the acts which defendant demanded could have been performed by anyone, whether or not a public officer, defendant claims that his demands were not extortionate within the meaning of section 518.

We find no statutory guidance as to precisely what conduct an "official act" describes. Nor does the term have a plain, unambiguous meaning, for neither party's proposed interpretation seems patently unreasonable. In light of this ambiguity, we find it necessary to apply traditional rules of construction to discern the probable intent of the Legislature in enacting these provisions. (See *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787]; *Select Base Materials Inc.* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

Initially, reference to legislative history may help to reveal the intent behind section 518. (*Sand* v. *Superior Court, supra; Estate of Ryan* (1943) 21 Cal.2d 498, 513 [133 P.2d 626].) When originally enacted in 1872, section 518 referred only to "the obtaining of property from another," and was probably designed to apply to situations left unpunished by the robbery statutes. (See Perkins, Criminal Law (3d ed. 1982) p. 449 and fn. 52.) In 1933, the Court of Appeal determined that public offices are not "property" within the meaning of section 518, and that therefore efforts to obtain a receivership order from a judge through blackmail did not amount to attempted extortion. (*People* v. *Robinson* (1933) 130 Cal.App. 664 [20 P.2d 369].) In 1939, the Legislature amended section 518 to include within its scope "official acts" in addition to "property." (Stats. 1939, ch. 601, § 1, p. 2017.) This amendment evidently was a reaction to the *Robinson* decision. (*Isaac* v. *Superior Court* (1978) 79 Cal.App.3d 260, 263 [146 Cal.Rptr. 396]; cf. *People* v. *Dixon* (1979) 24 Cal.3d 43, 51-52 [154 Cal.Rptr. 236, 592 P.2d 752] [interpretation of statute in light of "decisional background"]; *People* v. *Perkins* (1951) 37 Cal.2d 62, 63 [230 P.2d 353] [same].)

The Legislature was presumably acquainted with the prior judicial construction of the phrase "official act" when it enacted the 1939 amendment. Six years earlier, in *Abbott* v. *Cooper* (1933) 218 Cal. 425 [23 P.2d 1027], this court had specifically interpreted that phrase, albeit in a different context. In *Abbott,* plaintiff sued a sheriff and a bonding agent for false imprisonment at the hands of a sheriff's deputy who arrested him allegedly without sufficient cause. His right to recover turned on whether the deputy's conduct amounted to an "official" act for which the sheriff and surety would be liable under agency principles. (*Id.,* at pp. 430-431.) In reversing the trial court's grant of nonsuit, we made the following pertinent observation: "[The deputy sheriff] was an officer in charge of a county jail, and had authority to detain persons charged with crime on a suitable writ or process . . . . He exercised every function a jailer or officer could have exercised in the discharge of official duty . . . . [¶] '[A]n official act does not mean what the deputy might lawfully do in the execution of his office; . . . . *It means . . . whatever is done under color or by virtue of his office.'* [Citation.]" (*Id.,* at p. 433, italics added.)

The foregoing passage from *Abbott* indicates that it is *the functional nature* of the public officer's conduct that establishes its "official" character; an act is official if it is done in an official capacity, rather than privately. The concept of "official act" is not limited to authorized acts nor is it so broad as to encompass *any* conduct by an officer occurring during his working hours. We held in *Abbott* that although the arrest was illegal "because it was in excess of [the deputy's] duty," it was nonetheless an official act since the deputy acted "in the line—direction—of official duty." (*Id.,* at p. 431; see also *People* v. *Byers* (1936) 5 Cal.2d 676, 682 [55 P.2d 1177] ["misconduct in office" includes activities carried out in the line of official duty, whether or not authorized].)

We may presume that the Legislature in 1939 intended "official act" to be construed in a manner consistent with prior decisional law. (See *People* v. *Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33]; *Pacific Intermountain Express* v. *National Union Fire Ins. Co.* (1984) 151 Cal.App.3d 777, 783 [198 Cal.Rptr. 897].) We therefore employ *Abbott*'s analysis here. Defendant's demand that the deputies drive him to San Francisco cannot reasonably be characterized as an attempt to obtain an act performed in an *official* capacity, or under color of public office. Indeed, any person able to operate a motor vehicle could have performed the act. In contrast, in *Robinson, supra,* 130 Cal.App. 664, only a judge acting by virtue of his public office could have granted the receivership order which defendant sought to obtain by means of blackmail. Because the Legislature expanded the definition of extortion to cover situations like *Robinson,* we conclude that it intended to limit the concept of "official act" to include

only those acts performed by an officer in his official capacity, which make some use of his public office.

Ordinarily, any reasonable doubts as to the proper meaning of an ambiguous criminal statute should be resolved in favor of the defendant. (See, e.g., *Carlos v. Superior Court* (1983) 35 Cal.3d 131, 145 [197 Cal.Rptr. 79, 672 P.2d 862]; *People v. Speers* (1983) 33 Cal.3d 279, 283 [188 Cal.Rptr. 454, 655 P.2d 1289].) Here, contrary to the People's contention, threats or demands cannot be converted into extortion merely because the person threatened happens to be an on-duty law enforcement officer. Had defendant effected an unassisted jailbreak from Folsom Prison, and then forced an off-duty policeman to drive him to San Francisco and release him, certainly his conduct would have been as culpable as it was here, yet under neither party's view would that conduct have fallen within the purview of section 518. We cannot adopt an interpretation that would lead to such anomalous results. (See *In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549].) We conclude that defendant's demands to be driven to San Francisco and released from custody did not amount to extortion or attempted extortion.[1]

Two appellate decisions appear to conflict with our interpretation of sections 209 and 518. In *McGee v. Superior Court* (1973) 34 Cal.App.3d 201, 220 [109 Cal.Rptr. 758], the defendant held hostages to prevent law enforcement officials from arresting him. After a mistrial, he challenged the propriety of a retrial on an aggravated kidnaping charge, asserting that sections 209 and 518 were void for vagueness and that his conduct did not constitute extortion. The Court of Appeal dismissed the vagueness claim, holding that the statute adequately encompassed defendant's attempts to make officers "forego [their] official duty not [*sic*] to interfere with law violations occurring in [their] presence." (*Id.*, at p. 220.) To the extent *McGee* implies that any conduct aimed at interfering with law enforcement duties is punishable under section 209, it is hereby disapproved. A wide range of criminal activity is directed toward that end.

*Isaac v. Superior Court, supra,* 79 Cal.App.3d 260, presents a conflict more apparent than real. There, the information charged defendant with an

---

[1] We observe that the test for "official act" extortion which we have adopted will not result in any serious misconduct going entirely unpunished. A threat of harm to a public officer unless he performs some act not in his official capacity, though not extortion, still might amount to an unlawful threat under section 71. That section makes it unlawful to attempt to cause any public officer or employee to do, or refrain from doing, any act "in the performance of his duties" by means of a direct threat to inflict injury on any person or property, if it reasonably appears to the person threatened that the actor has the ability to carry out the threat. An initial conviction under section 71 is only punishable as a misdemeanor, but subsequent convictions are punishable as felonies. (See also § 76 [threatening life of elected state official or judge].)

"attempt to obtain an official act of a public officer . . . by wrongful use of force or fear," arising out of threats made by defendant to a police chief to secure the release of persons in custody. The court's holding that the information could stand was limited to whether the quoted language adequately charged attempted extortion under section 524. The court did not pass on the question whether mere demands to release prisoners from custody would actually amount to extortion. In addition, it is likely that a police chief's acts to release a prisoner would be deemed to have been made in an official capacity. (See Gov. Code, § 41605.)

■ Defendant also contends that the trial court erred in instructing the jury that assault with a deadly weapon (§ 245) is a lesser included offense of kidnaping for extortion. Although we agree, we also conclude that, on this record, the error was not prejudicial; the jury was fully instructed on the requisite elements of the assault offense. In addition, defendant complains of the trial court's failure to instruct on the lesser offense of false imprisonment. (§ 236.) We deem the point waived, however, for failure to assert it before the Court of Appeal.

Defendant's conviction of kidnaping for the purpose of extortion is reversed. In all other respects, the judgment is affirmed, and the case is remanded to the trial court for appropriate resentencing consistent with this opinion.

Mosk, J., Broussard, J., and Reynoso, J., concurred.

**KAUS, J.**\*—I concur in the result, although my reasons for believing that there was no kidnaping for purposes of extortion under Penal Code section 209, subdivision (a)[1] are somewhat narrower than those of the majority.

In analyzing whether the facts of this case support a kidnaping for extortion conviction, the majority focuses solely on whether the acts of the police officers demanded by defendant amounted to "an official act of a public officer" under section 518—the extortion statute. The majority concludes that an "act is official if it is done in an official capacity rather than privately." With respect, I can see problems down the road if that is to be the universal touchstone.

To solve this case, however, it is not necessary to seek and find a solution for all doubtful future cases of "official action." In my view, the majority's

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] All section references are to the Penal Code.

approach overlooks a threshold flaw in the prosecution's position which fails to take into account the sharp distinction that section 209 draws between kidnaping for purposes of extortion (subd. (a)) and kidnaping for purposes of robbery (subd. (b)).[2] The statutory scheme makes it clear that the Legislature intended to reserve the more drastic penalty of subdivision (a) for cases involving the typical kidnaping for ransom scenario, where the kidnaping victim is held for some period of time to extort some collateral act. (See Note, *Struggling with California's Kidnaping to Commit Robbery Provision* (1976) 27 Hastings L.J. 1335, 1347.) Subdivision (a) was not intended to apply to cases which fit the typical robbery mold, where the victim is required, by force or fear, immediately to part with a wallet, a car or some other property. The facts of this case, however, are obviously closer to the "robbery" than to the "extortion" model.

How is this distinction reflected in the statutory language? We can start with the proposition that section 518 appears to put "property" and "official acts" on a par, as alternative objectives of a possible act of extortion.[3] Thus one would suppose that if a defendant applies force or fear—or both—to obtain property along with the official act, then if the crime is robbery with respect to the property, it cannot be extortion as far as the official act is concerned. Personally I have always had a problem with the "consent" part of the crime of extortion. "To constitute extortion the victim must consent, albeit it is a coerced and unwilling consent . . . ." (*People* v. *Goodman* (1958) 159 Cal.App.2d 54, 61 [323 P.2d 536].) Frankly I find it difficult to distinguish the consent of the bank teller, who obediently empties his till into the armed robber's satchel, from the consent of the parent of a kidnaped child, who delivers the ransom money at the appointed place. The difference seems to be in the immediacy and the nature of the threat, not in the reality of consent. (See Model Pen. Code & Commentaries, com. 3(d) to § 222.1, pp. 110-111.)

In any event if, in this case, defendant had demanded the officers' guns as well as his own eventual release, obviously he would have been in the process of committing a robbery as far as the guns were concerned. Clearly, then, even if he did demand an official act as well, it would not have been performed with the officers' "consent" within the meaning of section 518,

---

[2]When subdivision (a) applies, the penalty is life without possibility of parole if the victim suffers bodily harm and life imprisonment if the victim is unharmed; under subdivision (b), the penalty is life with possibility of parole, whether or not the victim suffers bodily harm.

[3]Grammatically the words "with his consent" in section 518 can be construed to modify only property, permitting a conviction for extortion of official acts even if they are performed under the gun. Neither party, however, contends for such a construction, and such a reading would render the "official act" portion of section 518 indistinguishable from section 71.

and would therefore not constitute extortion for purposes of the kidnaping for extortion provision. That is all we have to hold in this case.

Bird, C. J., and Grodin, J., concurred.