[No. B085237. Second Dist., Div. Six. July 27, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE CHACON et al., Defendants and Appellants.

## HEADNOTES

Classified to California Digest of Official Reports

56

**COUNSEL**

Janyce Keiko Imata Blair and Clifford Gardner, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Kerrigan M. Keach, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

YEGAN, J.—California Youth Authority inmates Freddie Chacon and Raul Alberto Lopez kidnapped a librarian during an attempted escape. They inflicted "bodily harm" and exposed her to a "substantial likelihood of death." Appellants were apprehended, convicted, and sentenced to state prison for life without the possibility of parole.

The amended information charged appellants with escape by means of force and violence (count I; Welf. & Inst. Code, § 1768.7, subd. (b)), two counts of assault with a deadly weapon (counts II [Goldman] & III [Victorino]; Pen. Code, § 245, subd. (a)(1)),[1] extortion (count IV [Lieutenant Barrett]; § 520), aggravated kidnapping for ransom (count V [Goldman]; § 209, subd. (a)), false imprisonment of a hostage and use of the victim as shield (count VI [Goldman]; §§ 210.5, 236), attempted kidnapping (count VII [Goldman]; §§ 664, 207, subd. (a)), and false imprisonment by violence

---

[1]All further references are to the Penal Code.

(count VIII [Goldman]; § 236). Personal use of a deadly or dangerous weapon allegations were appended to counts I through V. (§ 12022, subd. (b).)

Appellants entered pleas of not guilty, denied the special allegations, and waived jury trial. The matter was submitted on the preliminary hearing transcript and exhibits. The trial court found appellants guilty as charged and found the special allegations to be true.

As to the aggravated kidnapping (count V), the trial court found that the victim suffered "bodily harm" and was confined in a manner exposing her to a "substantial likelihood of death." (§ 209, subd. (a).) It sentenced appellants to state prison for life without the possibility of parole, plus one year for personal use of a dangerous weapon. (§§ 209, subd. (a), 12022, subd. (b).)

Appellants were also sentenced to a determinate term of nine years. The trial court selected count I (escape by means of force and violence) as the principal offense and imposed an upper term of six years. As to counts II (assault with a deadly weapon), III (assault with a deadly weapon), and count IV (extortion), it imposed a one-year consecutive term for each count (one-third the midterm) and stayed the one-year weapon enhancement for count IV. (§§ 1170.1, subd. (a); 12022, subd. (b).) It imposed and stayed a concurrent five-year term as to count VI (false imprisonment of a hostage), a two-year-six-month term as to count VII (attempted kidnapping), and a two-year term as to count VIII (false imprisonment by violence).

Pursuant to section 669, the trial court ordered the determinate sentence to run consecutive to the life without parole term and ordered appellants to serve the determinate sentence first. It determined that the life without parole term should run consecutive to the other terms because the injuries inflicted on the victim were gratuitous and caused by the use of force over and above that necessary for the commission of kidnapping.

Appellants contend that (1) the life without parole sentence for aggravated kidnapping is cruel or unusual punishment, (2) insufficient evidence was presented that the kidnap victim suffered "bodily harm" within the meaning of section 209, subdivision (a), or was exposed to a substantial likelihood of death, (3) appellants did not extort an "official act," (4) the convictions for false imprisonment by violence and attempted kidnapping should be vacated because they are lesser included offenses of kidnapping for ransom, (5) the sentence for aggravated kidnapping, extortion, escape, and assault with a deadly weapon violates the section 654 prohibition against multiple punishment, and (6) the court erred in imposing a consecutive determinate sentence.

We vacate the convictions for attempted kidnapping and false imprisonment (counts VII & VIII), stay the sentences for escape, assault with a deadly weapon, and extortion (counts I, II, & IV) pursuant to section 654, modify the judgment (§ 1260), and affirm the judgment as modified. This results in a determinate five-year term followed by sentence of life without the possibility of parole.

*Facts*

On September 17, 1993, appellants were confined at El Paso de Robles, a youth authority facility in Paso Robles. Jerry Oliver, a group supervisor, observed appellants break from a group of wards, run to the library, and punch the librarian, Ava Goldman, in the face. Lopez put his arm around Goldman's neck and dragged her inside where he held a sharpened metal shank to her neck.[2]

Roy Victorino, a vocational landscape instructor, tried to rescue Goldman. Lopez swung at him with the shank. Victorino deflected the blow and sustained a puncture wound to his stomach and a cut on his wrist. Lopez put the shank against Goldman's neck and yelled, "back off or I'll kill her!"

Chacon ran back and forth to the front door, screaming that they wanted the "Officer of the Day's" pickup truck. Chacon threatened to "kill the bitch" if the truck was not delivered. When staff members tried to talk to Chacon, Lopez applied pressure to Goldman's neck, causing her to pass out a second time. Chacon ran over to Goldman and stabbed her in the stomach with a shank. Appellants threatened to "kill the bitch" if the truck was not delivered. Chacon held the shank to Goldman's right eye and started a countdown from 10.

The "Officer of the Day," Lieutenant John Barrett, directed Jerry Oliver to park the truck in front of the library. Appellants dragged Goldman to the truck. Lopez kept his arm around her neck and held the shank to her head. Appellants screamed and hollered, "[b]etter not do anything to the truck or do anything with us or we're going to kill the bitch."

Goldman sat in the middle of the truck cab with Lopez on the passenger side. Lopez continued to hold Goldman around the neck. Chacon got behind the wheel, accelerated full throttle, and spun the tires. Chacon steered the

---

[2]We have physically examined the metal "shanks" as well as the photographs depicting Goldman's injuries. (Cal. Rules of Court, rule 10(d).) "A 'shank' is a prison-made stabbing weapon." (*People* v. *Balderas* (1985) 41 Cal.3d 144, 166, fn. 6 [222 Cal.Rptr. 184, 711 P.2d 480].)

truck towards Barrett, hitting him on the left arm. As the truck drove past, Barrett sprayed mace through the driver's open window. The truck sped away, traveled 150 feet, and crashed into a tree. The force of the impact broke the windshield, collapsed the steering wheel, and jammed the doors shut. Appellants were apprehended. A road map with an escape route to Mexico was found on Chacon's person.

Goldman woke up facedown, yelling "ow, ow, I hurt, I hurt, my face, my face, my eyes, my eyes, my back, my back." Mace was in her eyes and coming out her mouth. An ambulance transported her to the hospital where she was treated for a cut on the right eyelid, bruises, multiple contusions, and a right arm sprain. As a result of this attack, Goldman was unable to work from September 17, 1993, to November 29, 1993.

### Aggravated Kidnap: Bodily Harm

Appellants contend that insufficient evidence was presented to support the finding that Goldman suffered "bodily harm" within the meaning of section 209, subdivision (a). They assert that Goldman's injuries were trivial and incidental to the kidnapping. Section 209, subdivision (a) provides that the penalty is life without possibility of parole if the victim suffers "bodily harm" *or* is intentionally confined in a manner which exposes the victim to a substantial likelihood of death.

In *People* v. *Schoenfeld* (1980) 111 Cal.App.3d 671 [168 Cal.Rptr. 762], the defendants pled guilty to 27 counts of kidnapping for ransom after abducting a busload of schoolchildren from Chowchilla. The trial court found that three of the victims suffered "bodily harm" and imposed a sentence of life without parole. The bodily harm consisted of a nosebleed (not caused by the defendant), fainting spells, nausea and stomachache. (*Id.,* at p. 690.)     The Court of Appeal reversed and held that "bodily harm," for purposes of aggravated kidnapping for ransom, required "1) a substantial or serious injury to the body of the kidnaped victim, 2) by application of a physical force, 3) beyond that necessarily involved in the forcible kidnapping. [Citations.]" (*Id.,* at page 685.)[3]

Appellants argue that "bodily harm" requires broken bones or injuries necessitating surgery. We disagree. Whether "bodily harm" has been suffered is a factual question to be decided by the trier of fact. We review

---

[3]In 1982, the Legislature, in response to *People* v. *Schoenfeld, supra,* 111 Cal.App.3d 671, broadened the maximum penalty to include kidnappers who intentionally confine a victim " 'in a manner which exposes such person to substantial likelihood of death.' " (See *People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1227, & fn. 11 [277 Cal.Rptr. 382].)

adverse determinations to defendants by application of the three-prong test articulated in *People* v. *Schoenfeld, supra,* 111 Cal.App.3d at page 685 and the substantial evidence rule. (See, e.g., *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R. 1255].)

▉▉▉ Here, appellants hit Goldman in the face, choked her unconscious, stabbed her in the stomach, cut her on the right eyelid, and inflicted severe bruises and contusions to her right arm, leg, hip, ankles, and back. Appellants poked, cut, and scratched the victim with shanks made from rusty landscape nails. The injuries included a nine-inch scratch from the bottom of her throat to her right ear. Goldman testified that she could hardly walk after the incident and that her right arm was badly sprained. Goldman was treated at a hospital and missed 10 weeks of work. She recovered use of the right arm about a week after the incident.

The trial court factually found that "Ms. Goldman did suffer bodily harm . . . . It appears to me Ms. Goldman suffered bruising and severe bruising. She suffered what, in my opinion, were severe abrasions; that she suffered swelling; that she suffered unconsciousness on at least two occasions. And . . . that is a bodily injury, in this court's mind. [¶] She suffered sprains. It's common knowledge that sprains can actually be more severe than broken bones. And it's this court's experience that some cuts requiring sutures can cause less discomfort than the sorts of injuries that were received by Ms. Goldman as a direct result of these defendants."

The injuries suffered meet the three-prong test articulated in *People* v. *Schoenfeld, supra,* 111 Cal.App.3d at page 685. Substantial evidence supports the trial court's factual determination. (E.g., *People* v. *Rayford* (1994) 9 Cal.4th 1, 23 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) We cannot say that the injuries inflicted on Goldman were "trivial." (*People* v. *Jackson* (1955) 44 Cal.2d 511, 517 [282 P.2d 898]; *People* v. *Gilbert* (1965) 63 Cal.2d 690, 711 [47 Cal.Rptr. 909, 408 P.2d 365].)

Appellant Lopez argues that the trial court erred in considering the victim's cumulative injuries because the kidnapping was complete once the pickup was delivered. We disagree. "[F]orcible detention of a victim is an element of kidnapping and as long as the detention continues, the crime continues. [Citation.]" (*People* v. *Masten* (1982) 137 Cal.App.3d 579, 588 [187 Cal.Rptr. 515]; see also *People* v. *Thomas* (1994) 26 Cal.App.4th 1328, 1335 [32 Cal.Rptr.2d 177] [abduction followed by continuous period of detention]; *People* v. *Dacy* (1970) 5 Cal.App.3d 216, 219 [85 Cal.Rptr. 57] [kidnap for ransom began with entry into victim's house and ended in high-speed chase]; and *People* v. *Reed* (1969) 270 Cal.App.2d 37, 49-50 [75 Cal.Rptr. 430] [kidnap ended after police rescue].)

Appellants' reliance on *People* v. *Wiley* (1994) 25 Cal.App.4th 159 [30 Cal.Rptr.2d 701], *People* v. *Beaumaster* (1971) 17 Cal.App.3d 996 [95 Cal.Rptr. 360], and *People* v. *Thomas* (1970) 3 Cal.App.3d 859 [83 Cal.Rptr. 879] does not compel a different result. There, the defendants committed a robbery or kidnapping, and after the crimes were completed, committed additional offenses. The courts held that the crimes were separate and distinct offenses. (*People* v. *Wiley*, *supra*, 25 Cal.App.4th at p. 163 [kidnapping for robbery terminated before detention for extortion]; *People* v. *Beaumaster*, *supra*, 17 Cal.App.3d at pp. 1008-1009 [robbery, then kidnap for robbery, followed by forcible oral copulation]; *People* v. *Thomas*, *supra*, 3 Cal.App.3d at pp. 866-867 [robbery, attempted robbery, and kidnap for robbery completed before defendant sexually molested the same victims].)

*Aggravated Kidnap: Substantial Likelihood of Death*

Appellants also contend that insufficient evidence was presented that they intentionally confined Goldman in a manner that exposed her to a "substantial likelihood of death." The argument lacks merit. Before the truck was delivered, appellants choked Goldman unconscious, stabbed her in the stomach, and severely bruised and sprained her right arm. The method of confinement and appellants' use of Goldman as a hostage exposed her to a substantial risk of death.

The trial court also found that the escape in the truck posed a substantial risk of death because it could have led to a high speed pursuit. This was not impermissible speculation. The Legislature's choice of the word "likelihood" allows and requires the trier of fact to draw reasonable inferences in determining whether the victim was exposed to a substantial likelihood of death.

Forced movement of the victim is not an element of kidnapping for ransom. (*People* v. *MacInnes* (1973) 30 Cal.App.3d 838, 844 [106 Cal.Rptr. 589]; *People* v. *Rayford*, *supra*, 9 Cal.4th 1, 12, fn 8.) Intentional movement of the victim may create a substantial risk of death. (E.g., *People* v. *Smith* (1992) 18 Cal.App.4th 1192, 1196 [27 Cal.Rptr.2d 20] [victim forced to accompany defendants on two- to three-block drive]; *People* v. *Daniels* (1988) 202 Cal.App.3d 671, 683 [248 Cal.Rptr. 753] [three- to four-block movement]; *In re Earley* (1975) 14 Cal.3d 122, 130 [120 Cal.Rptr. 881, 534 P.2d 721] [one-block movement].)

Here, after appellants dragged Goldman to the truck, and sped away from the library, the truck ran into a tree. The force of the impact broke the windshield, jammed the doors shut, and collapsed the steering wheel. The

trial court factually found that the escape with Goldman created a "substantial risk of her death." Substantial evidence supports this factual determination. (*People* v. *Rayford*, *supra*, 9 Cal.4th at p. 23.)

*Extortion*

■ Appellant Chacon argues that the prosecution failed to prove extortion because the delivery of the pickup was not an "official act." The contention is without merit. "Extortion" is defined in section 518 as "the obtaining of property from another, with his consent, *or* the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Italics added.) Section 518 provides that the "obtaining of property" and obtaining of an "official act" are alternative objectives of extortion. (*People* v. *Norris* (1985) 40 Cal.3d 51, 58 [219 Cal.Rptr. 7, 706 P.2d 1141] (con. opn. of Kaus, J.).)

Appellants were not convicted of extorting an "official act."[4] The trial court found Lieutenant Barrett furnished the pickup truck "because of the force, fear, and threat being used against Ms. Goldman."

Appellants' reliance on *People* v. *Norris*, *supra*, 40 Cal.3d 51 is misplaced. There, the defendant, a prisoner, was transported by two police officers from prison to county jail. Norris brandished a revolver and ordered the officers to drive him to San Francisco. The officers escaped from the car and Norris was captured. Norris was convicted of aggravated kidnapping for extortion of an official act and sentenced to life in prison without the possibility of parole. The Supreme Court reversed on the ground that the demand to be driven to San Francisco was not extortion. "[T]hreats or demands cannot be converted into extortion [of an official act] merely because the person threatened happens to be an on-duty law enforcement officer." (*Id.*, at p. 56.) The case is distinguishable and not controlling here.

---

[4]Count IV of the information does not allege that appellants violated section 520 by extorting an official act from Lieutenant Barrett. It alleges, inter alia, that appellants extorted "property" from him.

Count V of the information, in pertinent part, alleged that appellants violated section 209, subdivision (a) by kidnapping Goldman ". . . for ransom, reward, extortion and to extract from relatives and friends of Ava Goldman money and other valuable things to wit, a 1990 CHEVY PICKUP."

The information pled count V in the conjunctive and the People proved the disjunctive. (*In re Bushman* (1970) 1 Cal.3d 767, 774-775 [83 Cal.Rptr. 375, 463 P.2d 727].) Reference to "extortion" in count V does not mean that the People's theory was "extortion of an official act." Nor does the separate count of extortion of Lieutenant Barrett, count IV, mean that that was the People's theory as to count V. "[E]ach count of an accusatory pleading . . . charges a separate and distinct offense [and] must stand on its own merit and the disposition of one count has no effect or bearing on the other counts in the accusation. [Citations.]" (*People* v. *Ham* (1970) 7 Cal.App.3d 768, 776 [86 Cal.Rptr. 906].)

█ Chacon further contends that the aggravated kidnap conviction must be reversed because his acts did not amount to extortion or attempted extortion. We again point out that appellants were convicted of kidnap for ransom, not kidnap for extortion. Section 209, subdivision (a), is phrased in the disjunctive and encompasses kidnapping " 'for ransom, reward or to commit extortion *or* to exact from another person any money or valuable thing. . . .' [Citation.]" (*People* v. *Ibrahim* (1993) 19 Cal.App.4th 1692, 1696 [24 Cal.Rptr.2d 269].)

█ Chacon finally asserts that the demand for the truck was robbery, not extortion. He cites *People* v. *Martinez* (1984) 150 Cal.App.3d 579 [198 Cal.Rptr. 565] for the rule that the confinement of a victim incidental to a robbery does not support a conviction for aggravated kidnap. The argument lacks merit. Robbery and extortion are not the same. "[T]he two crimes are distinguished by the fact that in extortion the property is taken with the victim's consent whereas in robbery it is taken against his will." (*In re Stanley E.* (1978) 81 Cal.App.3d 415, 420 [146 Cal.Rptr. 232].) If the ransom demand is made on a person other than the kidnap victim, there is no robbery. The kidnapping for ransom statute applies ". . . to those situations involving a primary and secondary victim, where one of the victims is held or taken away and the other is subjected to a ransom or extortion demand." (*People* v. *Martinez, supra*, 150 Cal.App.3d at p. 591.)

### Cruel or Unusual Punishment

█ Appellants contend that the sentence of life without possibility of parole is, "on its face" and "as applied," cruel or unusual punishment. Section 209, subdivision (a), provides that a kidnapping which results in "bodily harm" to the victim or exposes the victim to a "substantial likelihood of death" carries a mandatory sentence of life without parole.

█ On review, appellants have the burden of showing that the punishment prescribed is unconstitutional. (*People* v. *Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001].) "A tripartite test has been established to determine whether a penalty offends the prohibition against cruel . . . [or] unusual punishment. First, courts examine the nature of the offense and the offender, 'with particular regard to the degree of danger both present to society.' Second, a comparison is made of the challenged penalty with those imposed in the same jurisdiction for more serious crimes. Third, the challenged penalty is compared with those imposed for the same offense in other jurisdictions. [Citations.] In undertaking this three-part analysis, we consider the 'totality of the circumstances' surrounding the commission of the offense. [Citations.]" (*People* v. *King* (1993) 16 Cal.App.4th 567, 572 [20 Cal.Rptr.2d 220].)

▮ Appellants assert that the penalty for aggravated kidnapping for ransom is grossly disproportionate to the penalty imposed in other states and to penalties imposed for more serious offenses in California. Similar challenges have been uniformly rejected. (*People* v. *Thompson* (1994) 24 Cal.App.4th 299, 307 [29 Cal.Rptr.2d 847]; *People* v. *Castillo* (1991) 233 Cal.App.3d 36, 66 [284 Cal.Rptr. 382]; *People* v. *Ordonez, supra,* 226 Cal.App.3d at pp. 1236-1237.)

*People* v. *Castillo, supra,* 233 Cal.App.3d 36 is illustrative and dispositive. " 'The selection of a proper penalty for a criminal offense is a legislative function involving an appraisal of the evils to be corrected, the weighing of practical alternatives, and consideration of relevant policy factors and responsiveness to the public will.' [Citation.] This broad legislative discretion is subject to constitutional limitation, but given the long-standing, even ancient, horror of kidnapping [citation] and the substantial risk to human life that it presents [citation], we [conclude] that the punishment [on its face] is not excessive." (*Id.,* at p. 66, citing *People* v. *Ordonez, supra,* 226 Cal.App.3d at pp. 1236-1237.)

Nor is the punishment cruel or unusual as applied to appellants. Aggravated kidnapping for ransom involves an inherent danger to the life of the victim. "Because it is the Legislature which determines [the] appropriate penalty for criminal offenses, the defendant must overcome a 'considerable burden' in convincing us that his sentence was disproportionate to his level of culpability. [Citation.]" (*People* v. *Weddle* (1991) 1 Cal.App.4th 1190, 1196-1197 [2 Cal.Rptr.2d 714].)

Here, the sentence was lawfully predicated on the heinous nature of the crime and appellants' individualized culpability. Appellants planned the escape and selected Goldman as the kidnap victim because she was small and vulnerable. They threatened to kill her, choked her unconscious, inflicted bodily harm, and exposed her to a substantial risk of death. The sentence of life without possibility of parole is not disproportionate to this crime when measured against appellants' individualized culpability.[5]

On its face and as applied, the sentences of life without the possibility of parole are not cruel or unusual punishment under the California or federal Constitution. (Cal. Const., art. I, § 17; U.S. Const., 8th Amend.)

---

[5]The probation report stated that Chacon was 16 years old at the time of the kidnapping and was "quite criminally sophisticated." Chacon planned the escape and obtained a transfer to the Paso Robles facility because he heard it would be easier to "break out" there. Chacon picked Goldman as the victim because "she was weak" and described himself as a criminal who would never change.

The probation report further indicated that Lopez, age 16, agreed to escape with Chacon. Lopez and Chacon took a vocational landscape class and made the shanks from long rusty nails that were sharpened on a cement wall. The probation report stated: "Lopez was insistent they would have stabbed or killed Goldman if they were forced to. He said if he was going to

*Lesser Offenses of False Imprisonment and Attempted Kidnapping*

Appellants meritoriously contend that the convictions for attempted kidnapping and false imprisonment (counts VII & VIII) should be vacated because they are lesser-included offenses of kidnapping for ransom. (*People v. Magana* (1991) 230 Cal.App.3d 1117, 1120-1121 [281 Cal.Rptr. 338] [false imprisonment lesser-offense of kidnapping]; *People v. Daly* (1992) 8 Cal.App.4th 47, 57 [10 Cal.Rptr.2d 21] [attempted kidnapping a lesser included offense of kidnapping].) Respondent concedes the point. The convictions for attempted kidnapping and false imprisonment (counts VII and VIII) are vacated.

*Section 654*

Appellants contend that the sentence for aggravated kidnapping, extortion, escape by force and violence, and assault with a deadly weapon constitutes impermissible multiple punishment. Section 654 prohibits multiple punishment for an indivisible course of conduct even though it violates more than one statute.[6] (*People v. James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135].) Whether a course of conduct is indivisible depends on the intent and objective of the actor. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1216 [23 Cal.Rptr.2d 144, 858 P.2d 611].)

In *In re McCoy* (1968) 266 Cal.App.2d 739 [72 Cal.Rptr. 373], an inmate at San Quentin broke into a home on the prison grounds, brandished a knife, tied up a woman, and took cash, clothes, and the family automobile. McCoy escaped but was later apprehended. The Court of Appeal held that the robbery was part of and intended to consummate the escape. Applying section 654, the court held that McCoy could only be punished for the more serious crime, robbery. (266 Cal.App.2d at p. 740.)

---

go down, he was going to take somebody with him. Lopez emphasized he would have gone out like a soldier and done what he had to do if it would have been necessary. When asked if he really thought the shanks could have hurt someone, Lopez explained he could have done a lot of damage with the shank he was holding because he had it pressed to victim Goldman's neck/throat area. He said any of these 'soft tissue' areas could be very deadly. Lopez was also convinced that Chacon would have killed Goldman if it had been necessary."

[6]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

The same principle applies here. The kidnap for ransom, extortion, and escape were part of an indivisible transaction having a single objective: escape.[7] We conclude that section 654 requires a stay of the sentences for escape and extortion. (Counts I & IV.) "Although the commission of these offenses occurred during the same general transaction, section 954 expressly permits multiple convictions. On the other hand, [the] offenses were incident to one objective, [appellants' escape]. The California Supreme Court has recently reaffirmed the doctrine of *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], which interprets section 654 as permitting punishment for only one of multiple offenses which are incident to a single objective as determined by the intent and objective of the actor. [Citation.]" *(People* v. *Wiley, supra,* 25 Cal.App.4th at p. 163.) Section 654 bars multiple punishment where the crimes are directed toward a single goal. Accordingly, the sentence for extortion and attempted escape must be stayed.

The sentences for assault with a deadly weapon (counts II and III) require a different analysis. In count II, appellants were charged with assaulting Goldman. The evidence was uncontroverted that Lopez held a shank to Goldman's neck and choked her unconscious. Chacon ran up to Goldman and stabbed her in the stomach. Relying on cases such as *People* v. *Nguyen* (1988) 204 Cal.App.3d 181, 190-191 [251 Cal.Rptr. 40], the Attorney General claims that these assaults were gratuitous and unnecessary acts of violence and not incidental to the kidnap. As to Goldman, we cannot agree. The acts of violence upon her, while atrocious, were committed to get the attention of Lieutenant Barrett so that he would supply the truck. The aggravated kidnap was ongoing. The sentence on count II must be stayed.

Appellants were also convicted of assaulting Roy Victorino with a deadly weapon. (Count III.) When Victorino attempted to rescue Goldman, Lopez took a swing at him. Victorino warded this blow but was stabbed in the stomach.

Even though the defendant entertains a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence against a different victim. *(People* v. *Miller* (1977) 18

---

[7]The prosecutor conceded that he "overcharged" the case "to allow for any legal technicalities or concerns and lesser included offenses or whatever." Had appellants effected the escape before the kidnapping and extortion, separate punishment would be appropriate. (E.g., *People* v. *Nick* (1985) 164 Cal.App.3d 141, 147 [210 Cal.Rptr. 137] [robbery committed after escape completed]; *People* v. *Bailey* (1974) 38 Cal.App.3d 693, 701 [113 Cal.Rptr. 514] [separate punishment for kidnapping and escape proper where escape perfected before kidnapping].)

Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) "The purpose of section 654 is to ensure punishment will be commensurate with one's culpability. [Citations.] . . . And, the fact certain acts are proximate in time is not determinate in finding an indivisible course of conduct. Multiple criminal objectives may divide those acts occurring closely together in time. [Citation.]" (*People* v. *Bradley* (1993) 15 Cal.App.4th 1144, 1157 [19 Cal.Rptr.2d 276].) A sentence was properly imposed on count III for assault with a deadly weapon on Victorino.

### Consecutive Sentence

■ Appellants finally argue that the trial court erred in ordering the determinate sentence to run consecutive to the life without possibility against parole sentence. The trial court found that consecutive sentences were appropriate because the crimes involved separate acts of violence or threats of violence of separate victims. (Cal. Rules of Court, rule 425(a)(2); *People* v. *Levitt* (1984) 156 Cal.App.3d 500, 518 [203 Cal.Rptr. 276].) No error occurred.

The record shows that the kidnap victim was selected by appellants because she was a female and small in size, i.e., she was particularly vulnerable. In addition, appellants' prior convictions were numerous and of increasing seriousness. (Cal. Rules of Court, rules 421(a)(3), 425(b).) The presence of these factors indicates that the trial court did not abuse its discretion in imposing a consecutive sentence. (*People* v. *Arviso* (1988) 201 Cal.App.3d 1055, 1059 [247 Cal.Rptr. 559].)

### Conclusion

Where, as here, the trial court's intention is clear, there is no need to remand for resentencing as we have the statutory power to modify the judgment. (§ 1260.) There is no likelihood that the trial court would, on remand, impose leniency in the selection of a term as to count III. The conduct which led to the conviction is aggravated and we safely say that the trial court would find that the circumstances in aggravation outweighed any factor in mitigation. Remand for resentencing would exalt substance over form. (E.g., *People* v. *Bravott* (1986) 183 Cal.App.3d 93, 98 [227 Cal.Rptr. 810].)

The convictions for attempted kidnapping and false imprisonment (counts VII & VIII) are vacated. A stay of sentence for escape, assault with a deadly

weapon, extortion, and false imprisonment of a hostage (counts I, II, IV, and VI) is imposed. The trial court is directed to send an amended abstract of judgment to the Department of Correction designating the following: count III as the principal offense with the upper term of four years, such term to be served consecutive to count V with a one-year enhancement for personal use of a dangerous weapon. As so modified, the judgments are affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

On August 24, 1995, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 2, 1995.