[No. A057177. First Dist., Div. Five. Nov. 8, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MAMDOUH IBRAHIM et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III(B)-(F).

## COUNSEL

Kathy M. Chavez and George L. Schraer, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen, Enid A. Camps and John H. Deist, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### KING, J.—

#### I. INTRODUCTION

In this case we hold that kidnapping for extortion does not require the person extorted be someone other than the kidnapped victim. Mamdouh Ibrahim and Atif Ibrahim appeal from a judgment of conviction for multiple offenses, including murder, rape, and kidnapping for extortion resulting in death. We affirm.

#### II. BACKGROUND

Mamdouh and Atif are brothers. The victim, Zinab Saad, was their former stepmother. Each emigrated from Egypt. In 1991, Zinab was divorced and

living with her two daughters in San Mateo. Mamdouh shared an apartment in Concord with Subhi Beilani. Circumstantial evidence indicates that on Friday, January 18, 1991, Mamdouh and Atif, accompanied by Subhi, abducted Zinab from her house in San Mateo and took her to the Concord apartment, where she was raped and murdered. They then took the body to the Marin Headlands and set it on fire.

The evidence of activity by Mamdouh, Atif and Subhi between 4 p.m. and 10 p.m. on January 18 is sketchy. Witnesses testified that the three left the Concord apartment with Mamdouh's girlfriend at 4 p.m. in two vehicles, leaving the girlfriend at her workplace at 4:10 p.m.; they later returned to the apartment, with Subhi being the first to arrive at 7:45 p.m.; they left again in two vehicles at 9 p.m.

Zinab had planned to spend the weekend with her boyfriend at a resort, but when he arrived at her house to pick her up at 6:45 p.m. she was not there. The house was later found to be in slight disarray.

At 10 p.m., federal park rangers at the Marin Headlands saw two vehicles enter a side road. A few minutes later, the rangers saw a bonfire alongside the road, illuminating the two vehicles. Mamdouh, Atif and Subhi were subsequently apprehended by assisting officers. The vehicle Mamdouh had been driving smelled of gasoline. Zinab's body, burned with gasoline, was found at the site of the bonfire.

The county coroner determined that Zinab had apparently been strangled to death before her body was burned. There was internal bleeding in her neck and head, as well as blood on the surface of her head. Her mouth was covered with duct tape, and a piece of striped cloth covered her eyes. Semen was present in her vagina.

A search of the Concord apartment yielded Zinab's purse and tote bag, a knotted tie bearing duct tape and hairs similar to Zinab's, a cigarette butt bearing traces of lipstick similar to Zinab's, a roll of duct tape, a can of mace, four pieces of Zinab's jewelry, and a bloodstained striped shirt which matched the cloth covering Zinab's eyes. Officers at the Marin Headlands found a piece of duct tape in a trash can, a partial roll of duct tape in a dumpster, and, at the side of a road, a plastic bag containing items of Mamdouh's clothing bearing bloodstains which matched Zinab's blood.

When the men were booked, the booking officer found in Subhi's wallet a note in Zinab's handwriting. The note said, "I am Zinab Saad. I take $4,000, $4,000 only, from Subhi Beilani." It was signed by Zinab and dated September 3, 1989, but the paper on which it was written seemed to the booking officer to be fairly new.

The evidence is murky as to *why* Zinab was kidnapped and killed. The prosecutor's theory was that the motive was financial. Two outstanding bills from Mamdouh's insurance company and automobile dealer were found in the glove compartment of his vehicle, and he had recently sought unsuccessfully to borrow money from a friend.

All three men were prosecuted, but only Mamdouh testified. He gave the following version of Zinab's death: He and Zinab had had a prior sexual relationship, but by 1991 they had not been in contact for about 18 months. On January 18, 1991, Zinab telephoned him and asked if he would pick her up; she wanted to spend the night at his apartment. Mamdouh, Atif and Subhi drove in two vehicles to Zinab's house in San Mateo and took her back to the Concord apartment. As the four were watching television in the living room, Zinab went to Mamdouh's bedroom. Mamdouh followed her there, and they had consensual sexual intercourse. They then returned to the living room, where the four discussed Subhi's desire to buy Atif's car. Zinab asked if Subhi needed money and, as a joke, she wrote the promissory note and said, "Here, this is the money. Go get it." Zinab subsequently became upset and started to cry for some unknown reason, and she returned to Mamdouh's bedroom. He visited her there twice. During his second visit she repeatedly yelled that something was her "fault." He held her shoulders and helped her to lie on the bed, and then left the room. When he returned five minutes later, she was dead. Fearing his family would learn of his involvement with Zinab and the police might think he had killed her, Mamdouh decided to make it look as if she had been robbed. He bound her arms, taped her mouth and took her jewelry. He, Atif and Subhi then left in two vehicles with the body. When they stopped to buy gasoline for the vehicles, they decided to burn the body. They drove to the Marin Headlands, where Mamdouh put gasoline on the body and set it on fire.

A jury convicted Mamdouh of first degree murder (Pen. Code, § 187), rape (Pen. Code, § 261, subd. (a)(2)), kidnapping for extortion resulting in death (Pen. Code, § 209, subd. (a)), simple kidnapping (Pen. Code, § 207, subd. (a)), conspiracy (Pen. Code, § 182, subd. (1)), removing articles from a corpse (Pen. Code, § 642), and false imprisonment (Pen. Code, § 236). He was acquitted of robbery (Pen. Code, § 211) and kidnapping for robbery (Pen. Code, § 209, subd. (b)). The jury returned the same verdicts as to Atif, except he was acquitted of rape and removing articles from a corpse. Subhi was acquitted on all charges except murder and simple kidnapping, as to which the jury was unable to reach verdicts. Pursuant to the convictions of kidnapping for extortion resulting in death, the court sentenced Mamdouh and Atif to imprisonment for life without possibility of parole (LWOP).

## III. Discussion

### A. *Kidnapping for Extortion*

 The primary focus of this appeal is the LWOP sentences for kidnapping for extortion resulting in death. Mamdouh and Atif contend they did not commit this offense because it requires that the person from whom property is obtained be someone other than the kidnapped victim.

This argument belies the plain language of the aggravated kidnapping statute, which encompasses a kidnapping "for ransom, reward or to commit extortion *or* to exact from another person any money or valuable thing . . . ." (Pen. Code, § 209, subd. (a), italics added.) Because the statute is phrased in the disjunctive, it describes four different types of aggravated kidnapping: (1) for ransom; (2) for reward; (3) to commit extortion; and (4) to exact from another person any money or valuable thing. The crime of extortion (Pen. Code, § 518) does not require that the fruits of the extortion be obtained from a third party. Appellants would have the "another person" language of the fourth type of aggravated kidnapping apply to the first three, but that construction is logically precluded by the disjunctive language of the statute.

Appellants rely on *People* v. *Martinez* (1984) 150 Cal.App.3d 579 [198 Cal.Rptr. 565], disapproved on another point in *People* v. *Hayes* (1990) 52 Cal.3d 577, 628, footnote 10 [276 Cal.Rptr. 874, 802 P.2d 376]. The perpetrators in that case detained a husband and wife during a residential robbery and threatened to harm the husband if the wife screamed. The People's theory was that the defendants were guilty of kidnapping for ransom or extortion because the wife's cooperation was a "valuable thing" within the meaning of the aggravated kidnapping statute. The appellate court rejected this theory on the ground the restraint was merely incidental to the robbery and did not "substantially increase the risk of harm over and above that necessarily present in the crime of the robbery itself." (150 Cal.App.3d at p. 595; cf. *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677] [asportation that elevates robbery to kidnapping for robbery does not include incidental movements that do not substantially increase the risk of harm necessarily present in robbery].)

In reviewing the case law on the subject, the court in *Martinez* commented, "The kidnap for ransom and extortion cases have recognized four-fact situations which show this form of aggravated kidnaping." (*People* v. *Martinez, supra,* 150 Cal.App.3d at p. 588.) The court then described those situations, all of which involved kidnapping of a primary victim and ransom

or extortion from a secondary victim: (1) the primary victim is abducted and held while ransom is demanded from a secondary victim; (2) the kidnap victim is not moved but the secondary victim is; (3) neither victim is moved; and (4) the kidnap victim is held to induce police officers to refrain from resisting and stopping the defendant's criminal acts. (*Id.* at pp. 588-589.) *Martinez* concluded from these cases that the aggravated kidnapping statute is "intended to apply to those situations involving a primary and secondary victim, where one of the victims is held or taken away and the other is subjected to a ransom or extortion demand." (*Id.* at p. 591.)

From this discussion in *Martinez*, appellants conclude that the four situations described in that case are the *only* possible types of kidnapping for ransom or extortion, and thus kidnapping for extortion requires a secondary victim other than the person kidnapped. But *Martinez* did not so hold. The court merely categorized the existing cases and concluded the statute was intended to apply to situations involving primary and secondary victims. The court never said those situations represent the *exclusive* application of the statute.

In contrast, a subsequent decision, *People* v. *Superior Court* (*Deardorf*) (1986) 183 Cal.App.3d 509 [288 Cal.Rptr. 137] directly held that kidnapping for extortion does *not* require that property be exacted from a secondary victim. Relying on the "plain meaning" of the disjunctive language in the aggravated kidnapping statute, the court concluded, "We are unaware of any requirement, imposed either by statute or case law, that requires the victim in a kidnapping for extortion case to have someone other than himself step onto the stage in order to provide the crook with an item of value. Extortion is defined by [Penal Code] section 518 as '. . . the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . .' Significantly, section 518 makes no requirement that someone other than the victim pay the criminal." (*Id.* at pp. 513-514; see also Perkins & Boyce, Criminal Law (3d ed. 1982) p. 233 ["One who detains another for the purpose of extorting money from him or from another person as the price of his release is guilty of kidnaping for ransom . . . ."].)

Appellants contend *Martinez* and *Deardorf* are in conflict and *Martinez* represents the better view. We perceive no conflict, since we do not read *Martinez* as presenting an exclusive list of kidnappings for ransom or extortion. Moreover, because of the disjunctive language of Penal Code section 209, subdivision (a), we agree with the reasoning in *Deardorf.*

Appellants also contend the language in Penal Code section 209 "or to exact from another person any money or valuable thing" should be construed

as modifying the provisions "for ransom, reward or to commit extortion"—making "another person" an essential element of kidnapping for extortion—because the former language would otherwise be surplusage, describing situations already covered by the provisions "for ransom, reward or to commit extortion." But this construction is itself infected by redundancy: if the "another person" language encompasses and restricts the ransom, reward and extortion provisions, it renders *those* provisions surplusage.

Finally, appellants claim kidnapping for extortion necessarily requires a secondary victim because, otherwise, all face-to-face simple extortions would constitute kidnapping for extortion since they all involve *confinement*, which is an element of aggravated kidnapping. (Pen. Code, § 209, subd. (a) ["Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person . . . ."].) Appellants rely by analogy on *People* v. *Daniels supra*, 71 Cal.2d at page 1139, which held that kidnapping for robbery does not encompass robberies "in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." But a face-to-face simple extortion does not necessarily involve confinement; it may be committed through "force or fear." (Pen. Code, § 518.) Moreover, where extortion does involve confinement, the problem posed by appellants can be met by applying the reasoning of *Daniels* and requiring, for purposes of aggravated kidnapping, that the confinement not be merely incidental to simple extortion but substantially increase the risk of harm over and above that necessarily present in extortion. That standard is met here; there was a considerable asportation for many miles and a lengthy confinement for several hours, neither of which was necessary to extort the promissory note from Zinab. It cannot be reasonably asserted—and appellants do not claim—that Zinab's confinement was merely incidental to the commission of simple extortion.

We conclude that appellants were properly convicted of kidnapping for extortion resulting in death, and thus were properly sentenced to life without possibility of parole.

We are disturbed, however, by the fact that where there is no secondary victim, the distinction between kidnapping for extortion and kidnapping for robbery can be subtle (see *People* v. *Norris* (1985) 40 Cal.3d 51, 58 [219 Cal.Rptr. 7, 706 P.2d 1141] (conc. opn. of Kaus, J.)), yet the difference in penalty is substantial where the result is death/life without possibility of parole for the former (Pen. Code, § 209, subd. (a)), but life with possibility of parole for the latter (Pen. Code, § 209, subd. (b)). We suspect the

difference in penalty is rooted in the common (though not essential) involvement of multiple victims—primary and secondary—in kidnappings for extortion. Absent a secondary victim, we can discern no reason for punishing the kidnapper-extortionist far more severely than the kidnapper-robber. Nor, do we believe, should so great a difference in penalty hinge upon so subtle a distinction as that between extortion and robbery—whether property was taken *consensually* by force or fear (Pen. Code, § 518) or *nonconsensually* by force or fear (Pen. Code, § 211). We believe that where, as here, a kidnapping for extortion resulting in death does not involve a secondary victim, the magnitude of the crime is equal to that of a kidnapping for robbery resulting in death, and the two crimes should be equally punished. We therefore urge the Legislature to reconsider the sentencing schemes for these offenses.

B.-F.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied December 6, 1993, and appellants' petitions for review by the Supreme Court were denied February 3, 1994.

---

*See footnote, *ante*, page 1692.