Filed 1/12/15  P. v. Beltran CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064469 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS251538) |
| ULYSES SANDOVAL BELTRAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard, III, Judge.  Affirmed in part, reversed in part and remanded with directions.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ulyses Sandoval Beltran of kidnapping for purposes of ransom, reward, or extortion (Pen. Code,[1] § 209, subd. (a); count 1), assault with a firearm (§ 245, subd. (a)(2); count 3), torture (§ 206; count 4), forcible rape (§ 261, subd. (a)(2); counts 5 & 6), and forcible sodomy (§ 286, subd. (c)(2); count 7). It found true allegations that he personally used a firearm with respect to counts 1, 3, 5, 6, and 7 (§ 12022.53, subd. (b)), inflicted great bodily injury with respect to counts 5, 6, and 7 (§ 12022.8), and allegations pursuant to the "One-Strike" law as to counts 5, 6 and 7 (§ 667.61). The court sentenced defendant to 50 years to life in prison plus 40 years plus life, consisting of 25-year-to-life indeterminate terms on counts 5 and 6, life with parole for count 1, forty years in prison for the enhancements on counts 1, 5 and 6, and stayed sentences on counts 3, 4 and 7. It ordered defendant to register as a sex offender and to pay various fees and fines.

Defendant contends: (1) the evidence is insufficient to support his count 1 conviction for kidnapping for extortion; (2) the trial court violated his Sixth and Fourteenth Amendment rights to due process and a fair trial by failing to instruct on the lesser included offense of felony false imprisonment or alternatively, the court violated those rights by misinstructing the jury on an element of the kidnapping for extortion offense; (3) his multiple one-strike sentences violate former section 667.61, subdivision (g); and (4) the cumulative effect of these errors requires reversal of the judgment. Defendant also requests that this court independently review the sealed transcript of an in

---

[1] Statutory references are to the Penal Code unless otherwise specified. For ease of reference, we call the kidnapping offense under section 209, subdivision (a) aggravated kidnapping or kidnapping for extortion, recognizing there are other means to commit the offense.

2

camera hearing and sealed documents to determine whether the trial court correctly withheld documents or materials relating to the victim's application for a visa. We agree with defendant in part, and conclude the evidence is insufficient to support his count 1 conviction for aggravated kidnapping. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Guadalupe M. first met defendant in 1999 at a dance hall and eventually had intercourse with him twice, once the morning after they met and defendant insisted on having intercourse with her while she was intoxicated, and a month and a half later, when they had intercourse a second time. In 2001, defendant and Guadalupe were at a social event and defendant forced her into a car and drove to a location where he unsuccessfully tried to have intercourse with her again. Eventually Guadalupe developed a relationship with defendant's cousin, Jesus S,. When defendant found out, he called her from Mexico, accused her of "whoring" around, and threatened her with payback.

In November 2000, Guadalupe was convicted of possessing drugs for sale and deported. She returned to the United States and lived with Jesus S. for a time, giving birth to Jesus S.'s son in 2002. Jesus S. had a very good friend and coworker who Guadalupe knew by the name Chilacas.[2] In 2002, Jesus S. went to prison. Eventually Guadalupe began living with her brother Giovanni and Marisela R. in a San Ysidro apartment.

---

[2] The parties also refer to this individual as Chilapas.

3

In the early morning hours of October 18, 2004, Jesus S.'s brother Jorge and defendant came to Guadalupe's apartment. R. let them in and told Guadalupe that her brother-in-law was asking for her. When Guadalupe came out, Jorge S. told her that his cousin, defendant, wanted to talk to her. Guadalupe was surprised and scared, because defendant had warned her he was coming back. Defendant told Guadalupe he wanted to talk outside. When she refused, he took out a gun, grabbed her, and forced her out of the house. He forced her into a vehicle with two other men and they drove away while defendant pressed the gun to Guadalupe's head.

They took Guadalupe into a house where other men were present. Defendant asked Guadalupe about Chilacas; he told her that Chilacas owed him money and she had to know about him. When Guadalupe denied knowing about Chilacas, defendant hit her in the face. Guadalupe's hands and feet were tied and defendant ordered someone to bring pliers to pull out her fingernails. Defendant tried to pull on her nails while she begged him not to. Defendant told one of the men to put Guadalupe into a bedroom, and kept asking her about Chilacas. Defendant cut away the tape binding Guadalupe and he and the other man frightened her with their weapons.

Defendant told the other men to leave the room, removed Guadalupe's clothing, and raped and sodomized her. He left the room with his gun. Defendant eventually returned to the room and fell asleep resting on Guadalupe's legs. When he awoke, he took Guadalupe into the kitchen where the other men were present. Defendant told Guadalupe to clean the kitchen and ordered the men to get food from the grocery store. When they returned, defendant had her cook for the men. She complied. At some point,

4

defendant left the kitchen and was somewhere else in the house. Afterwards, defendant took Guadalupe back into the same bedroom and left, but returned to the room where he raped and sodomized her again. Defendant then got up and left the room, and Guadalupe found some clothing to change into and showered. Defendant returned and at his instruction, Guadalupe telephoned her brother and told him she was fine and would be taken home soon. Defendant told two men to take Guadalupe home and asked her to forgive him. He told her he did not want to harm her and not to call the police. The men dropped Guadalupe off near her house, and after she walked there, she called police.

The prosecutor argued to the jury as to the count 1 offense: "For count 1, the kidnapping for ransom or reward, the elements are that [defendant] kidnapped or abducted or seized or confined or carried away another person. In this case, we heard [defendant] kidnapped Guadalupe by taking her by force from the house. He did it for ransom[3] . . . or extortion or to get some money or something valuable. [¶] In this case, the information was about Chila[c]as. He is trying to get the money from her and he keeps trying and trying even after they start to torture her and he is not getting it. So all of those three elements are met." The trial court instructed the jury as to this offense in part as follows: "So the defendant is charged in count 1 with kidnapping for the purpose of ransom or reward or extortion that resulted in bodily harm in violation of Penal Code section 209[, subdivision (a)]. To prove the defendant is guilty of this crime, the People

---

[3]    At this point, the transcript reads: "He did it for ransom. We regard [*sic*] or extortion or to get some money or something valuable." The reporter's transcript most likely reflects a transcription error.

5

must prove that: [¶] One, the defendant kidnapped or abducted or seized or confined or concealed or carried away or invited [*sic*] or enticed or decoyed any person; [¶] Two, the defendant held or detained the other person; [¶] Three, the defendant did so for ransom or for reward or for extortion to get money or something valuable; [¶] Four, the other person did not consent to being kidnapped or abducted or seized or confined or concealed or carried away or invited biased or at the code [*sic*]. The defendant did. [*sic*][4]; [¶] And five, the defendant did not actually and reasonably believe that the other person consented to being kidnapped or abducted, seized or confined or concealed or carried away or it invited [*sic*] or enticed or decoyed. [¶] In order to consent, a person must act freely and voluntarily and know the nature of the act."

DISCUSSION

I. *The Evidence is Insufficient to Support The Aggravated Kidnapping Conviction*

Defendant contends no reasonable trier of fact could find that kidnapping someone for information is legally sufficient to prove he kidnapped Guadalupe "for ransom, reward, or to commit extortion or to exact from another person any money and valuable thing . . . ." As we explain, we agree.

A. *Standard of Review*

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[4] The written instruction here reads: ". . . or inveigled, or enticed, or decoyed . . . ." Presumably, this was another transcription error.

6

beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In our search for substantial evidence, we look at the entirety of the evidence, including defendant's conduct both before and after the criminal act.

B. *Analysis*

Section 209, subdivision (a) provides in part: "Any person who . . . kidnaps . . . another person . . . with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing . . . shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm . . . ." "Because the statute is phrased in the disjunctive, it describes four different types of aggravated kidnapping: (1) for ransom; (2) for reward; (3) to commit extortion; and (4) to exact from another person any money or valuable thing." (*People v. Ibrahim* (1993) 19 Cal.App.4th 1692, 1696.) Unlike the first three types of kidnapping, the fourth requires the "money or valuable thing" be obtained from a third party. (*Id.* at pp. 1696-1697.) In general, each of the forms of aggravated kidnapping shares the single primary element, that is the deprivation of a person's liberty in order to obtain a financial gain. (*People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1227; see *People v. Greenberger* (1997) 58 Cal.App.4th 298, 367.)

Defendant points out there is no evidence that any ransom was demanded for Guadalupe's release, or that he acted with any expectation of reward. He maintains there is no evidence of any communication to outside parties or a secondary victim. He argues Guadalupe's testimony does not reflect he obtained her consent through force or fear so as to take her personal property. Defendant also points out there was no secondary victim for the purpose of exacting money or valuables from *another person* within the meaning of section 209, subdivision (a). Defendant argues the prosecutor's theory that he kidnapped Guadalupe to get money from her is without any evidentiary support.

The People do not argue that the evidence supports the count 1 aggravated kidnapping on the theories of ransom, reward or to exact money or other valuable thing *from another person* within the meaning of section 209, subdivision (a). Rather, as defendant points out, the People's sole argument on appeal is that section 209, subdivision (a) is met because the evidence shows defendant "transported Guadalupe from her house at gunpoint with the intent to extort a 'valuable thing' *from her*" (italics added), namely, Chilacas's whereabouts.[5]

The People's argument conflates two different theories of aggravated kidnapping. As stated, one theory under the statute requires that the People prove the defendant took Guadalupe in order to extract money or some valuable thing from a third party. (*People*

_____

[5] This theory differs from the prosecutor's argument at trial that defendant was "trying to get the money from [Guadalupe] . . . ." Had the evidence shown that defendant sought to obtain *money* from Guadalupe with her consent by use of force or fear, we would uphold defendant's aggravated kidnapping conviction on a theory of extortion. There is no such evidence in the record.

8

*v. Ibrahim*, *supra*, 19 Cal.App.4th at pp. 1696, 1697.) But this case, as the People implicitly concede, does not involve a third party victim. A separate theory is extortion, which is "the obtaining of property from another, with his consent, . . . induced by a wrongful use of force or fear . . . ." (§ 518.) Courts uniformly conclude that kidnapping for extortion does not require that the person being extorted be someone other than the kidnap victim. (See *People v. Kozlowski* (2002) 96 Cal.App.4th 853, 870 [citing cases].) However, extortion does require that the defendant kidnap the victim with the intent of obtaining *property* with consent. Thus, in *People v. Superior Court (Deardorf)* (1986) 183 Cal.App.3d 509, proof that the defendants held a victim at gunpoint, forced him to drive and then forced him to put up his car as bond for a debt was sufficient to sustain the kidnapping for extortion offense. (*Id.* at pp. 513-514.) In *People v. Kozlowski*, *supra*, 96 Cal.App.4th 853, the Court of Appeal held that a personal identification number (PIN) associated with an automated teller machine card constitutes property for purposes of kidnapping for extortion. In reaching this conclusion, the court reasoned that the term "property" should be broadly interpreted for purposes of extortion. (*Id.* at pp. 865-866.) "The term is all-embracing, including every intangible benefit and prerogative susceptible of possession or disposition." (*Id.* at p. 866.) The *Kozlowski* court reasoned that a PIN code, a number that operates as a means of account access, is intangible property because the code is exclusively possessed and allows the possessor to access funds in a related bank account. (*Kozlowski*, at p. 867.)

These and other authorities recognize that property for purposes of extortion need not be some tangible item, and that convictions have been upheld where defendants

9

extorted intangible property. (*People v. Kozlowski*, *supra*, 96 Cal.App.4th at pp. 867-868, citing *People v. Cadman* (1881) 57 Cal. 562, 564 [right to take and prosecute appeal is assumed to be property within the meaning of the extortion statute]; *People v. Baker* (1978) 88 Cal.App.3d 115, 119 [right to file an administrative protest with the Alcoholic Beverage Control Board is property for purposes of extortion]; see also *People v. Fisher* (2013) 216 Cal.App.4th 212, 217 [term "property" for extortion statute includes a business owner's right to determine whom to employ in his or her business].)  These cases indicate that intangible property can have inherent value without connection to a physical thing.

But nothing in these cases suggests that mere information about the location of a debtor can reasonably be categorized as intangible property subject to extortion.  In *People v. Kozlowski*, *supra*, 96 Cal.App.4th 853, the court expansively defined the term "property" by holding that a PIN code constituted property.  There, the "property" had value because of its secrecy, security, and ability to exclude others from using it, similar to such things as trade secrets, confidential business information, or intellectual property.  In contrast, a person's location is valueless whether it is secret or disclosed.  We decline to extend the section 209, subdivision (a) offense of kidnapping for extortion beyond the understanding of "property" within the meaning of the above cited cases.

In this case, the sole evidence supporting the count 1 offense was Guadalupe's testimony that after taking her at gunpoint from her house, defendant asked her repeatedly about her knowledge of where Chilacas was because Chilacas owed defendant money, and that she "had to know" his location.  Though we are entitled to draw

10

reasonable inferences on our substantial evidence review, we cannot say a reasonable trier of fact could infer that defendant kidnapped Guadalupe for ransom, reward, to extort property, or to exact from a third person money or a valuable thing. In sum, the evidence is insufficient to support the jury's verdict on the count 1 offense.

Given our conclusion that the count 1 kidnapping offense is unsupported by the evidence, we need not decide defendant's claims of instructional error related to that offense, including instructions on lesser included offenses.

## II. *One-Strike Life Sentences*

The trial court sentenced defendant to consecutive life sentences on the count 5 and 6 forcible rapes offenses, reasoning that the count 6 offense "was not committed in close temporal and spatial proximity to the offenses in counts 5 and 7." The court reasoned: "After committing the offenses charged in counts 5 and 7 in one of the bedrooms of the house where the victim was taken and held against her will by the defendant and others, the defendant left the bedroom while the victim remained in the bedroom. [¶] Some short time thereafter, the defendant ordered the victim to cook for the victim and the others in the house. After cooking, as ordered, [Guadalupe] cleaned up for these men as ordered. [¶] Once this was completed, the defendant took the victim, once again, against her will, to another separate bedroom in the house, where he committed count 6. [¶] As a result, the offenses in count 6 occurred on a separate occasion than the offenses charged in counts 5 and 7. Accordingly, a separate custodial term from counts 5 and 7 may be imposed as to count 6."

11

Defendant contends his multiple one-strike sentences violated former section 667.61, subdivision (g) because the forcible rape and forcible sodomy offenses of counts 5, 6 and 7 were committed in close temporal and spatial proximity to each other, though the "events played out over several hours." He maintains the sentence is unauthorized under *People v. Jones* (2001) 25 Cal.4th 98 (*Jones*) and *People v. Fuller* (2006) 135 Cal.App.4th 1336 (*Fuller*).

Section 667.61, also known as the "One Strike" law, provides for indeterminate terms of 25 or 15 years to life for certain forcible sex offenses committed under aggravating circumstances. (§ 667.61, subds. (a) & (b).) The aggravating circumstances include kidnapping that substantially increased the risk of harm to the victim. (*Id.*, subd. (d)(2).) Before its 2006 amendment, section 667.61 subdivision (g)[6] stated that a One Strike sentence "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a *single occasion*." (Italics added.) The statute does not define the phrase "single occasion" and it does not set out criteria for determining whether multiple counts were committed on a single occasion.

In *Jones*, *supra*, 25 Cal.4th 98, the California Supreme Court held that the phrase "a single occasion" for purposes of then section 667.61, subdivision (g), meant the sex offenses "were committed in close temporal and spatial proximity." (*Jones*, at p. 107.) There, the defendant's sex crimes (one count of oral copulation and rape and three counts of sodomy) were committed in the backseat of a car over an hour and a half. (*Id.* at p.

---

6      Section 667.61 was amended in 2006, after the crimes in this case occurred. (Stats. 2006, ch. 337, § 33.)

101.) The court concluded that a single One Strike sentence should be imposed because the sexual assaults "occurred during an uninterrupted time frame and in a single location." (*Id.* at p. 107.) In *Fuller*, *supra*, 135 Cal.App.4th 1336, the Court of Appeal held that the imposition of three One Strike sentences for three acts of rape against a single victim was improper in a situation where the defendant raped the victim twice in her bedroom, both got dressed and went into the living room, but as he was preparing to leave, he raped the victim again. (*Id.* at p. 1339.) The defendant had stayed in the apartment over an hour before forcing the victim to drop him off where he had kidnapped her. (*Id.* at p. 1339.) The court reasoned: "All three rapes occurred within about an hour while both [the defendant] and Ms. L. remained inside her apartment. The only movement was the short distance from her bedroom to the living room. Defendant kept Ms. L. under his continuous and uninterrupted control during the entire time of the incident. Thus, there was a close temporal and spatial proximity between the three offenses. Accordingly, we vacate the sentence and remand for resentencing." (*Id.* at p. 1343.)

Defendant contends that *Jones* and *Fuller* require us to conclude that the forcible rape of Guadalupe in count 5 was committed on the same occasion as the forcible rape in count 6, because they occurred in the same house and were separated only by a "short interval" that occurred when Guadalupe cleaned the kitchen and cooked food for defendant and the other men. The contention is unpersuasive. Guadalupe's testimony makes clear that the two rapes did not occur during an uninterrupted timeframe, or while Guadalupe was in defendant's continuous and uninterrupted control. Though the two

13

rapes occurred in the bedroom of the house, unlike in *Jones* and *Fuller,* an appreciable break in the events in this case occurred when Guadalupe was left undisturbed while defendant slept, and then forced into the kitchen to clean and cook for the men. Guadalupe testified that between the first rape and her second rape, some of the men went to the grocery store to purchase food, and defendant left the kitchen at some point. This interruption distinguishes *Jones* and *Fuller*. Further, defendant admits the kidnapping took place over the course of several hours, and though Guadalupe's testimony is not exact as to how many hours she was away from her home, the duration of her overall captivity was longer than the incidents in *Jones* and *Fuller*. We conclude there is substantial evidence to support the trial court's finding that the rapes did not occur on a single occasion, and thus it properly imposed a One Strike sentence for count 6.

### III. *Claim of Cumulative Error*

Defendant contends the trial court's errors cumulatively deprived him of due process and a fair and impartial trial, requiring reversal of the judgment. We have found merit to defendant's sufficiency of the evidence challenge, but conclude no other error occurred. Under the circumstances, there is no cumulative prejudicial error.

### IV. *Request for In Camera Review of Immigration Records*

Before trial, defense counsel sought information as to whether Guadalupe had obtained from the district attorney any promises of immigration relief in the form of either a "U-visa" that would allow her to remain in the United States as a crime victim, or some other favorable consideration. The district attorney's office was then in the process of obtaining Guadalupe's immigration file to determine if it contained discoverable

14

*Brady*-type[7] material.  The trial court eventually obtained the documents and informed counsel it would conduct an in camera review, and it later ordered them placed under seal at the conclusion of the case.

Asserting this court has a "constitutional responsibility to review trial court decisions where important rights are concerned," defendant asks that we independently review the sealed records to determine if any of the documents or other materials were discoverable, and whether the court properly withheld disclosure of any documents or information.  We have done so, and conclude the trial court neither abused its discretion in finding none of the materials was discoverable and that disclosure of the information was not appropriate, nor did the court violate any "important" right.  (See, e.g., *People v. Myles* (2012) 53 Cal.4th 1181, 1209 [applying abuse of discretion standard].)

---

7      Defense counsel referred to *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*), but acknowledged that *Brady* did not strictly apply to the situation.  The trial court observed that the circumstances did not implicate *Brady* because the immigration records were not in the People's possession, and thus the People had no obligation to produce them to the defense.  Defense counsel was aware that in 2004, Guadalupe had obtained information about a U-visa from a police detective who had recommended she go through the process to remain in the U.S., that Guadalupe had made efforts to obtain such a visa via an organization called Casa Cornelia, that district attorney investigators had engaged in discussions with her concerning the status of her efforts, and that Guadalupe was denied such a visa in 2004 when she first made her application.  Counsel sought to impeach Guadalupe with her motives in claiming she was a crime victim with regard to defendant.

DISPOSITION

The judgment of conviction for kidnap for extortion (count 1) is reversed. The matter is remanded to the superior court with directions to enter a judgment of acquittal as to count 1, vacate the 10-year firearm use enhancement on count 1, and for resentencing as necessary in accordance with this opinion. In all other respects, the judgment is affirmed. The court shall thereafter prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

16