Filed 7/22/15  P. v. Valle CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>DAVID VALLE,<br><br>　Defendant and Appellant. | 2d Crim. No. B257673<br>(Super. Ct. No. PA075131-01)<br>(Los Angeles County) |

This appeal concerns the attempted murder of a drug courier, Cesar Avila, who was kidnapped by rival gang members and shot.  David Valle appeals his conviction by jury for conspiracy to commit murder (count 1; Pen. Code, §§ 182, subd. (a)(1)/187, subd. (a))[1], attempted premeditated murder (count 3; §§ 664/187, subd. (a)), conspiracy to commit kidnapping for robbery (count 4; §§ 182, subd. (a)(1)/209, subd. (b)(1)), kidnapping to commit robbery (count 5; § 209, subd. (b)(1)), conspiracy to commit robbery (count 6; §§ 182, subd. (b)(1)/211), second degree robbery of an ATM machine (count 7; § 211), dissuading a witness by force or threat (count 9; § 136.1, subd. (c)(1)), possession of a firearm by a felon (count 10; § 29800, subd. (a)(1)), carjacking (count 14; § 215, subd. (a)), and aggravated kidnapping for ransom (count

---

[1] All statutory references are to the Penal Code.

15; § 209, subd. (a)). Except for count 10 (felon in possession of a firearm), the jury found that each count was committed for the benefit of or in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) On counts 1, 3, 9, 14 and 15, the jury found that appellant personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b)-(d), and that a principal personally used and intentionally discharged a firearm (§ 12022.53, subds. (b), (c), (e)(1)) causing great bodily injury to the victim (§ 12022.53, subds. (d), (e)(1)). In a bifurcated proceeding, appellant admitted that he was out on bail during the commission of the crimes (§ 12022.1) and suffered a prior prison term (§ 667.5, subd. (b)).

At sentencing, the trial court imposed consecutive state prison terms of life without possibility of parole (count 15 - aggravated kidnapping for ransom), 25 years to life (count 1 - conspiracy to commit murder), two life terms (count 9 - dissuading a witness; count 14 - carjacking), and 102 years to life on the firearm enhancements and out-on-bail enhancement with respect to counts 15, 1, 9 and 14.[2] A

---

[2] On count 15 (aggravated kidnapping for ransom) the trial court sentenced appellant to life without possibility of parole, plus 25 years to life on the firearm enhancement (§ 12022.53, subd. (d)), plus two years on the out-on-bail enhancement (§ 12022.1). A 20-year term (§ 12022.53, subd. (c)), 10-year term (§ 12022.53, subd. (b)), 25-year-to-life term (§ 12022.53, subds. (d)-(e)(1)), 20-year term (§ 12022.53, subds. (c) & (e)), and 10-year term (§ 12022.53, subds. (b) & (e)(1)) was imposed on the other firearm enhancements and stayed pursuant to section 12022.53, subdivision (f).

On count 1 (conspiracy to commit murder), the trial court imposed a consecutive term of 25 years to life with a minimum parole eligibility period of 15 years on the gang enhancement, plus a 25-year-to-life term on the firearm use enhancement (§ 12022.53, subd. (d)). A 20-year term (§ 12022.53, subd. (c)), 10-year term (§ 12022.53, subd. (b)), 25-year-to-life term (§ 12022.53, subds. (d)-(e)(1)), 20-year term (§ 12022.53, subds. (c) & (e)), and a 10-year term (§ 12022.53, subds. (b) & (e)) was imposed on the other firearm enhancements and stayed pursuant to section 12022.53, subdivision (f).

On count 3 (attempted murder with premeditation and deliberation and a gang enhancement), the trial court imposed a concurrent term of 15 years to life. The trial court also imposed a 20-year term (§ 12022.53, subd. (c)), a 10-year term (§ 12022.53,

subd. (b)), a 25-year-to-life term (§ 12022.53, subds. (d) &(e)), a 20-year term (§ 12022.53, subds. (c) & (e)), and a 10-year term (§ 12022.53, subds. (b) & (e) on the other firearm enhancements which were stayed pursuant to section 12022.53, subdivision (f). The entire sentence on count 3 was stayed pursuant to section 654.

On count 4 (conspiracy to commit kidnapping for robbery with a gang enhancement), the trial court imposed a term of life with a minimum eligible parole date of 15 years. The sentence was stayed pursuant to section 654.

On count 5 (kidnapping for robbery with a gang enhancement), the trial court imposed a term of life with a minimum eligible parole date of 15 years. The sentence was stayed pursuant to section 654.

On count 6 (conspiracy to commit robbery), the trial court imposed the high term of five years, plus 10 years on the gang enhancement, plus 10 years on the firearm enhancement (§12022.53, subd. (b)). The sentence was stayed pursuant to section 654.

On count 7 (robbery), appellant was sentenced to the high term of five years, plus 10 years on the gang enhancement, plus 10 years for personal use of a firearm (§ 12022.53, subd. (b)). The trial court also imposed a 10 year term on another firearm use enhancement (§ 12022.53, subds. (b) & (e)) which was stayed pursuant to section 12022.53, subdivision (f). The entire sentence on count 7 was stayed pursuant to section 654.

On count 9 (dissuading a witness by force, threat or violence with a gang enhancement), the trial court imposed a consecutive life term with a minimum eligible parole date of seven years, plus 25 years to life on the firearm use enhancement (§ 12022.53, subd. (d)) The trial court also imposed a 20-year term (§ 12022.53, subd. (c)), a 10-year term (§ 12022.53, subd. (b)), a 25-year-to-life term (§ 12022.53, subds. (d)-(e)), a 20-year term (§ 12022.53, subds. (c) & (e)), and a 10-year term (§ 12022.53, subds. (b) & (e)) on the other firearm enhancements which were stayed pursuant to section 12022.53, subdivision (f).

On Count 10 (possession of a firearm by a felon), the trial court imposed a three year high term, plus a four year high term on the gang enhancement (§ 186.22, subd. (b)(1)(A)) for an aggregate concurrent sentence of seven years. The record indicates that appellant was never charged with or convicted of a gang enhancement on this count. We accordingly strike the four year gang enhancement on count 10 and modify the sentence to reflect a concurrent three year sentence.

On count 14 (carjacking with a gang enhancement), the trial court imposed a life term with a minimum parole eligibility period of 15 years on the gang enhancement, plus a 25-year-to-life term on the firearm use enhancement (§ 12022.53, subd. (d)). On the other firearm enhancements, the trial court imposed a 20-year term (§ 12022.53, subd. (c)), a 10-year term (§ 12022.53, subd. (b)), a 25-year-to-life term (§ 12022.53, subds. (d)-(e)(1), a 20-year term (§ 12022.53, subds. (c) & (e)), and a 10-year term (§ 12022.53, subds. (b) & (e)) which were stayed pursuant to section

3

concurrent seven year sentence was imposed on count 10 (possession of firearm by felon) and the trial court stayed the sentences on the remaining counts (counts 3, 4, 5, 6, and 7) pursuant to section 654.  Appellant was ordered to pay fines and fees, including victim restitution and $5,000 direct restitution (§ 1202.4, subd. (b)).

Appellant contends that the evidence does not support his conviction for aggravated kidnapping for ransom (count 15), that the trial court misinstructed on aggravated kidnapping for ransom, that conspiracy to commit robbery (count 6) is a lesser included offense of conspiracy to commit kidnapping for purposes of robbery (count 4), that his sentence of life without possibility of parole for aggravated kidnapping is cruel or unusual punishment, and that the abstract of judgment erroneously states that a $5,000 parole revocation fine (§ 1202.45) was imposed.

We strike the convictions for conspiracy to commit kidnapping for purposes of robbery (count 4) and conspiracy to commit robbery (count 6), and strike the $5,000 parole restitution fine.  On count 10 (possession of a firearm by a felon), we strike the four-year gang enhancement (§ 186.22, subd. (b)(1)(A)) which was not charged or found to be true, and reduce the sentence to three years state prison.  On count 14 (carjacking), we reduce the life sentence to 15 years because the punishment for carjacking is a five year midterm (§ 215, subd. (b)) plus 10 years on the gang enhancement (§ 186.22, (b)(1)(C)).  The judgment, as modified, is affirmed.

*Facts*

On November 1, 2012, a drug dealer named "Carlos" told Avila to call Cruz Aguilar (aka Crook), a Clanton gang member, and pick up a $6,000 drug payment.  Aguilar agreed to meet Avila at a San Fernando Valley park.

When Avila arrived at the park, Aguilar, who was driving a white van, appellant, and a masked man named Palmdale abducted Avila at gunpoint.  Appellant

12022.53, subdivision (f).  The sentence on count 14 was ordered to run consecutive to the sentence on count 15.

4

(aka Miner), a member of the North Hollywood Boys gang, and Palmdale took Avila's Honda and made Avila get in the passenger seat.  Appellant took Avila's cell phone and wallet, broke the phone, and found an ATM bank card in the wallet.   Palmdale told Avila that if everything went well, everyone would go home.

An hour later,  Palmdale parked Avila's car and ordered him to get in the white Tahoe driven by Aguilar.  A woman exited the Tahoe and drove off in Avila's Honda.  Aguilar asked if drugs were in the Honda.  Avila insisted there was nothing in the vehicle.

Avila was driven to a shopping center and ordered to get in a Mitsubishi Galant with appellant, Palmdale and Carmen Garcia (aka Monster), a North Hollywood Boys gang member.  Garcia stopped at an ATM machine but was unable to withdraw money with Avila's bank card.  The foursome stopped at a doughnut store where Palmdale withdrew money from an ATM using Avila's bank card.  Palmdale gave some of the money to appellant.

Avila was next taken to a Good Nite Inn and held captive.  While there, Appellant struck Avila in the face with a handgun and yelled, "Why didn't you tell us your [Honda] has GPS?" Appellant threatened to kill Avila if they got caught.

At 2:00 a.m., Aguilar had Avila call the drug dealer, Carlos, and tell him to bring drugs.  Carlos said that he could not do that and asked Avila for a call back number.  Carlos suspected something was wrong and asked:  "Do they got you -- like is something going on?  Did they do something to you?  Because, you know, we got Lorenzo over here."  Avila was nervous and said he would call back.

Appellant thought the situation was "hot"  and forced Avila into the Honda which was parked outside.  Avila noticed that his car radio was missing and that the door panel had been dismantled by someone looking for money or drugs. Appellant gave directions and Garcia drove.  After they exited the freeway, appellant took Garcia's chrome revolver and ordered Avila out of the car.  While pointing the

5

revolver at Avila, appellant ordered him to walk toward some houses. Avila heard the revolver click and misfire. Avila feared for his life and told appellant not to worry because he was not going to call the police. Appellant laughed, drew a semi-automatic handgun from his waist band, and shot Avila five times in the abdomen, right arm, knee, and buttocks.

Officers responded to a 911 call and found Avila bleeding on a house porch. Avila stated that he was kidnapped, taken to a motel, and shot by North Hollywood Boys gang members. Avila identified appellant, Garcia, and Aguilar in photo line ups.

Thereafter, officers staked out a gang house and arrested appellant as he ran from the house. During the chase, appellant dropped a loaded .357 Ruger revolver. Inside the house, officers found a baseball cap with the word "Crooks" embroidered on it. The DNA on the cap matched appellant's profile.

On March 15, 2013 the police arrested Aguilar standing next to a truck in a Clanton gang area. Inside the truck, officers found Avila's bank card and a loaded .40 caliber Glock handgun with an extended ammo magazine.

Los Angeles Police Officer Matt Ethridge, a gang expert, testified that appellant and Garcia were members of the North Hollywood Boys gang, an organized street gang. Officer Ethridge stated that the gang's primary activities included vandalism, robbery, narcotics sales, weapons violations, assaults, and sometimes murder. The gang sold narcotics to make money and paid taxes to the Mexican Mafia.

Office Ethridge stated that Aguilar was a member of the Clanton gang, an organized street gang whose primary activities included vandalism, street robberies, narcotics sales, assault related crimes, and murders. The Clanton gang was an ally of the North Hollywood Boys gang and affiliated with the Mexican Mafia. Officer Ethridge opined that the kidnapping, carjacking, attempted murder, conspiracy, and

6

shooting were committed for the benefit of both gangs and enhanced the gangs' reputation for violence.

*Substantial Evidence: Kidnapping for Ransom*

Appellant argues that the conviction for kidnapping for ransom (count 15) is not supported by substantial evidence because no ransom demand was made. Section 209, subdivision (a) "describes four different types of aggravated kidnapping: (1) for ransom; (2) for reward; (3) to commit extortion; and (4) to exact from another money or a valuable thing" from a third party. (*People v. Ibrahim* (1993) 19 Cal.App.4th 1692, 1696.)

Here the jury was instructed on the first and fourth types of aggravated kidnapping, i.e., kidnapping for ransom and kidnapping to extract money or a valuable thing from another person. (CALCRIM 1202.) The evidence shows that appellant and his confederates kidnapped Avila, took his wallet, phone and car, and withdrew money from his bank account. They also threatened to send someone to Avila's house to find if he had drugs there. Pursuant to the kidnap statute, the ransom demand may be made on the primary kidnap victim as was the case here. (*People v. Kozlowski* (2002) 96 Cal.App.4th 853, 870-871].)

Appellant was also tried on the theory that Avila was kidnapped to exact narcotics from Carlos. Appellant and his co-conspirators held Avila captive and had him call Carlos. The demand for narcotics supported the theory that Avila was kidnapped to exact a valuable thing (narcotics) from another person. This type of kidnapping is a two-victim crime and involves a primary kidnap victim (Avila) and a secondary victim (Carlos) who is subject to a ransom or extortion demand. (See *People v. Eid* (2010) 187 Cal.pp.4th 859, 868.)

Appellant claims that the phone call to Carlos was to "buy" drugs and that no ransom demand was made because Avila was told not to say something stupid. Appellant is asking us to reweigh the evidence. That we cannot do. (*People v. Bolin*

(1998) 18 Cal.4th 297, 331-333.)  Carlos was told to bring drugs, suspected that something was wrong, and asked Avila "Did they do something to you?"

The jury reasonably inferred that the phone call was to exact narcotics in exchange for Avila's safety.  Carlos refused to produce drugs and told Avila to let them know that he had Lorenzo.  The evidence further shows that appellant and his co-conspirators dismantled the Honda interior based on the belief that drugs or money (presumably Carlos's drugs or money) was hidden in the door panels.  On review, we "presume the existence of every fact the trier [of fact] could reasonably deduce from the evidence in support of the judgment. . . .  The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 432.)

Substantial evidence supports the finding that Avila was kidnapped for purposes of making a ransom demand and to exact something of value, i.e., drugs or money from Carlos.  All forms of aggravated kidnapping share the single primary element of deprivation of a person's liberty in order to extract a financial gain. (*People v. Ordonez*  (1991) 226 Cal.App.3d 1207, 1227, fn. 12. )  After Carlos refused to comply with the ransom demand, appellant drove Avila to a residential area and shot him.  Where the evidence shows a discrete crime "but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis, or as the cases often put it, the 'theory' whereby the defendant is guilty. [Citation.]"  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  Due process was served by the requirement that the jury render a unanimous verdict on aggravated kidnapping, regardless of whether it unanimously agreed on the alternate theories underlying the verdict.  (*People v. McPeters* (1992) 2 Cal.4th 1148, 1185; *People v. Brisco* (2001) 92 Cal.App.4th 568, 591-592.)

8

*Instructional Error - Kidnapping for Ransom*

Appellant argues that the jury was misinstructed on kidnapping to exact money or something of value from another person. Section 209, subdivision (a) is phrased in the disjunctive and encompasses kidnapping for ransom, reward, to commit extortion, or to exact from another person money or a valuable thing. (*People v. Ibrahim, supra,* 19 Cal.App.4th at p. 1696.)

The jury was instructed that the prosecution had to prove that: "(1) The defendant kidnapped another person; [¶] (2) The defendant held or detained the other person; [¶] (3) The defendant did so for ransom or to get money or something valuable; [¶] AND [¶] (4) the other person did not consent to being kidnapped." Appellant complains that CALCRIM 1202 omits the phrase "from another person" where the kidnapper tries to exact money or a valuable thing from a secondary victim. Appellant, however, did not object. If appellant believed the instruction required elaboration or clarification, he was required to object or request a clarifying instruction. (*People v. Whalen* (2013) 56 Cal.4th 1, 81-82.) "[A] defendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions." (*People v. Daya* (1994) 29 Cal.App.4th 697, 714.0

Appellant argues, for the first time on appeal, that the third element of the instruction should have paraphrased section 209, subdivision (a) to say that the prosecution must prove that the defendant kidnapped another person "for ransom or to get *from another person* money or something valuable." Based on appellant's construction of the law, the trial court had a sua sponte duty to modify CALCRIM 1202 to read that the prosecution had to prove that appellant kidnapped "another person" (the primary victim), and held or detained "the other person" (i.e., the primary victim), and did so "for ransom or to get from *another person* money or something valuable." A reasonable juror would ask, "Who is 'the other person' and who is

9

'another person'?" Appellant cites no authority that CALJIC 1202 is a misstatement of the law or that due process requires that CALJIC 1202 be modified to render it misleading, ambiguous, confusing, or unintelligible.

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner. [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) The prosecution, in final argument, told the jury that appellant "held or detained Cesar Avila and did so for ransom or to get money or something valuable. [¶] So here, remember, they have Mr. Avila call Carlos. . . . [¶] . . . . . . [¶] They are trying to get additional narcotics brought over. [¶] That is something of value."

Based on the instructions, counsel's argument, and the evidence presented, the jury reasonably understood that in order to convict for aggravated kidnapping, the prosecution had to prove that Avila was kidnapped for ransom or to exact something of value from Carlos. Assuming, arguendo, that the CALCRIM 1202 misstated an element of the offense by not identifying Carlos as the secondary victim, the error was harmless beyond a reasonable doubt. (*Neder v. United States* (1999) 527 U.S. 1, 15 [144 L.Ed. 2d 35, 51]; *People v. Flood* (1998) 18 Cal.4th 470, 502-503.) It is uncontroverted that Avila was ordered to call Carlos to obtain narcotics after appellant and his confederates took Avila's cell phone, wallet, bank account money, and dismantled the Honda door panels. The demand for more drugs was directed to Carlos. Avila understood the call to be a ransom demand as did Carlos who warned appellant and his confederates that he had Lorenzo. It is not reasonably probable that appellant would have received a more favorable verdict had a modified CALJIC 1202 instruction been given. (*People v. Breverman* (1998) 19 Cal.4th 142, 165.)

*Single Conspiracy - Multiple Objects*

Counsel was asked to submit letter briefs on whether appellant can be convicted of only one conspiracy even though he was found guilty of conspiracy to commit murder (count 1), conspiracy to commit kidnapping for robbery (count 4), and conspiracy to commit robbery (count 6). It is well settled a single agreement to commit multiple crimes constitutes but one conspiracy. (*United States v. Broce* (1989) 488 U.S. 563, 570-571 [102 L.Ed.2d 927, 936-937]; *People v. Johnson* (2013) 57 Cal.4th 250, 266.) "'One agreement gives rise to only a single offense, despite any multiplicity of objects.'" (*People v. Lopez* (1994) 21 Cal.App.4th 1551, 1557.)

The same principle applies here. Although appellant conspired to murder, rob, and kidnap the victim for purposes of robbery, only one count of conspiracy can be sustained, i.e., count 1 for conspiracy to commit murder. (*Id*., at pp. 1558-1559.) "If the felony is conspiracy to commit two or more felonies which have different punishments and the commission of those felonies constitute but one offense of conspiracy, the penalty shall be that prescribed for the felony which has the greater punishment." (§ 182, subd. (a).) The trial court sentenced appellant to 25 years to life on count 1 for conspiracy to commit murder and stayed the sentences on sentences on count 4 (conspiracy to commit kidnapping for robbery) and count 6 (conspiracy to commit murder). The convictions of counts 4 and 6 are stricken.

*Cruel or Unusual Punishment*

Appellant argues that his sentence of life without possibility of parole (LWOP) for aggravated kidnapping is cruel or unusual punishment in violation of our state constitution. (Cal. Const., art. I, § 17.) Appellant forfeited the alleged error by not objecting and is precluded from raising it for the first time on appeal. (See *People v. Norman* (2003) 109 Cal.App.4th 221, 229-230; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.)

11

On the merits, appellant makes no showing that the LWOP sentence is so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. (*In re Lynch* (1972) 8 Cal.3d 410, 424.) To determine whether the sentence is disproportionate, the court examines: (1) the nature of the offense and the offender, (2) a comparison with the punishment imposed for more serious crimes in the same jurisdiction; and (3) a comparison with the punishment imposed for the same offense in different jurisdictions. (*Id.*, at pp. 425-427.)

Appellant argues that he was 19 years old, that he had a limited role in the kidnapping, and that he does not have a violent criminal record. Citing *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825], *Miller v. Alabama* (2012) 567 U.S. __ [183 L.Ed.2d 407], and *People v. Caballero* (2012) 55 Cal.4th 262, appellant asserts that the sentencing court must consider the defendant's mental and emotional development, the potential for rehabilitation, and the defendant's inability to appreciate the risks and consequences of committing an LWOP offense. None of these cases apply to offenders who, like appellant, are over the age of 18 and exhibit all the hallmarks of an adult. (See e.g., *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1217-1221 [rejecting cruel and unusual punishment claim by 18-year-old who stabbed victim during robbery]; *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482 [rejecting argument that defendant's age (18+ years) rendered sentence cruel and/or unusual].) Appellant was a member of a violent street gang, had a prison prior, was on probation or parole, and out on bail when he committed the aggravated kidnap. The kidnapping involved planning and sophistication, primary and secondary target victims, and the use of firearms. Appellant kidnapped Avila at gunpoint, threatened to kill him, struck him with the handgun, told Garcia where to drive, and shot Avila five times as he pled for his life. The violent nature of the kidnapping and cruel manner in which appellant carried it out supports the LWOP sentence.

The argument that the penalty for aggravated kidnapping is grossly disproportionate to the penalty imposed in other states and to penalties imposed for more serious offenses in California has been uniformly rejected by our courts. (*People v. Chacon* (1995) 37 Cal.App.4th 52, 64; *People v. Thompson* (1994) 24 Cal.App.4th 299, 307; *People v. Castillo* (1991) 233 Cal.App.3d 36, 66.) "Because it is the Legislature which determines [the] appropriate penalty for criminal offenses, [appellant] must overcome a 'considerable burden' in convincing us that his sentence was disproportionate to his level of culpability. [Citation.]" (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196-1197.) On its face and as applied, the sentence of life without possibility of parole is not cruel or unusual punishment under the California or federal Constitution. (Cal. Cons., art I, § 17; U.S. Const., 8th Amend.; *People v. Chacon, supra,* 37 Cal.App.4th at p. 64.)

*Parole Restitution Fine*

The abstract of judgment reflects that a $5,000 parole restitution fine was imposed. (§ 1202.45.) Appellant argues, and the Attorney General agrees, that the fine must be stricken because it was not imposed at the oral pronouncement of judgment. (See *People v. Jones* (2012) 54 Cal.4th 1, 89 [sentencing minute order/abstract of judgment must conform to oral pronouncement of judgment].) Such a fine is not permitted. Parole restitution fines may not be imposed where the defendant is sentenced to life without possibility of parole. (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185-1186.)

*Conclusion*

None of the purported errors, either singularly or cumulatively, prejudiced appellant's due process right to a fair trial. (*People v. Jenkins* (2002) 22 Cal.4th 900, 1056.) There are, however, sentencing and clerical errors. On count 10 (felon in possession of a firearm), the trial court imposed a four-year gang enhancement (§ 186.22, subd. (b)(1)(A)) which was not charged or found to be true.

13

We accordingly reduce the sentence on count 10, from seven years to four years. On count 14 (carjacking), we reduce the life sentence to 15 years because the carjacking conviction requires a five year midterm (§ 215, subd. (b)) plus 10 years on the gang enhancement (§ 186.22, (b)(1)(C)). On count 4 (conspiracy to commit kidnapping for robbery) and count 6 (conspiracy to commit robbery), the trial court stayed the sentences but the convictions should have been stricken. A single agreement to commit several crimes constitutes one conspiracy. (*People v. Johnson, supra,* 57 Cal.4th at p. 266.).

The clerk of the superior court is directed to amend the sentencing minute order and abstract of judgment to: (1) strike the convictions on count 4 (conspiracy to commit kidnapping for robbery) and count 6 (conspiracy to commit murder); (2) strike the $5,000 parole restitution fine; (3) strike the four-year gang enhancement (§ 186.22, subd. (b)(1)(A)) on count 10 to reflect a concurrent sentence of three years state prison; (4) correct the sentencing minute order and abstract of judgment (paragraph 6.b., page 1) with respect to count 14 (carjacking) to reflect a midterm sentence of five years (§ 215, subd. (a)) plus 10 years on the gang enhancement (§ 186.22, (b)(1)(C)); and (5) forward copies of the amended sentencing minute order and abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

14

Hayden Zacky, Judge

Superior Court County of Los Angeles

_____


James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. , Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.